F. P. MARTINEZ ET AL., APPELLANTS, VS. JAMES WARD ET ALS., APPELLEES.

1. Chapter 3130, Laws of 1879, (McClellan's Digest, page 713,) providing that a married woman may by petition and proofs become a free dealer, &c., as if unmarried under a decree and license granted by the Circuit Judge in equity, does not attempt to confer legislative power upon the Judge, and is not unconstitutional upon the ground that the action of the Judge is not judicial in its character.

2. A married woman, so licensed, may purchase goods for cash or on credit, and engage in trade as though she was not married, and the fact that her husband has signed a note with her and joined

in a mortgage to secure it, the note being given for money borrowed by her, and for her separate use, and no part of it having been paid by him, gives him no interest in the money, or in goods purchased by her with it for the purpose of trading on her own account, and his creditors cannot subject it to the satisfaction of his debts.

3. A married woman, so licensed, may employ her husband as a clerk or assistant in the business carried on by her as a trader, he having no other interest in the concern, without subjecting her goods to the payment of his debts beyond the value of his services over and above the expenses of supporting him and his family.

4. The purpose of the act was to enable a married woman, so licensed, to engage in trade and accumulate property in her own right and not liable to be subjected to the payment of the debts of an insolvent husband.

Appeal from the Circuit Court for Escambia county.

The facts of the case are stated in the opinion.

*Jno. C. Avery* and *Wm. A. Blount* for Appellants.

This is a proper case for equitable relief.

Ordinary means have been exhausted. 2 Wait's Actions & Defences, 412.

Any species of equitable property may thus be reached to satisfy a judgment. Ibid., 412.

The property sought to be reached is such that it could not be reached at law. Freeman on Ex., 425; 49 Mo., 565; 63 N. C., 283 ; 1 Paige, 637 ; 4 Johns. Ch., 450 ; 2 Atk., 600; 37 Geo., 170.

Appellants contend that the record shows a case of legal fraud on the part of Ward and his wife against his creditors, and that it also shows a case of actual fraud.

First, as to the legal fraud.

Chapter 3130 of the Laws of Florida is unconstitutional, because it undertakes to vest legislative power in Circuit Judges. Chap. 3, Const. of Fla.

" That which distinguishes a judicial from a legislative

act is, that one is a determination of what the existing law is in relation to some exising thing done or happened, whilst the other is a predetermination of what the law shall be for the regulation of all future cases falling under its provisions." Cool. Con. Lim., 91.

The proceeding created by Chapter 3130 undertakes to empower a Judge to say, not what the law is, but what it should be in the future as to the married woman who shall, in the manner pointed out, put the court in motion.

The action is neither *in personam* nor *in rem.* There is neither plaintiff nor defendant.

Now, if this act is unconstitutional and invalid, then the rights of the creditors of James Ward are as if the act had not been passed and the general law, uncontrolled by statute, applies.

Under that law the rights of the creditor are :

1. To subject the proceeds of Ward's labor; and he cannot bestow upon his wife his future earnings, without consideration, for that would be a fraudulent conveyance. Glidden vs. Taylor, 16 Ohio St., 509, 521; Bump on Fraud. Conv., 270, 271, 246-7-8; Wilson vs. Loomis, 55 Ill., 352; Nat. Bk. vs. Sprague, 5 C. E. Green, 13; Quidert vs. Pergeaux, 3, C. E. Green, 472.

Nor can he do this indirectly by carrying on business in his wife's name. Bump, 271.

2. To subject the proceeds of his wife's labor.. These are his property, and he cannot deprive the creditors of their right to subject them. (Bump, 265-6 and 272; Wilder vs. Abernathy, 54 Ala., 644; S. C., 25; Am. Rep., 734.) And this rule is not altered by the Constitution, Chap. IV., Sec. 26, or the Statutes, (act March 6, 1845,) neither of which mentions acquisition by labor.

The vesting in her of the proceeds of her labor is not implied from the Statutes and Constitution allowing her to ac-

quire in other ways. (Skillman vs. Skillman, 2 Beas., 403; Schouler on Dom. Rel., 242–3.) Of course, if the creditors are entitled to the proceeds of the husband's labor and the wife's labor, they are entitled to the products of their joint labor. Schouler on Dom. Rel., 244–245; 1 East, 432; 2 Bright's H. & W., 297; Hollowell vs. Horter, 11 Casey, 375.

3. To subject his property to the payment of his debts to them. All of this property was his. In view of their position in the store and his conduct therein, he could not escape responsibility for the goods bought on credit. His wife could not make herself legally responsible for them, and they become his.

The goods bought with the borrowed money were also his. The loan was, in law, to him, because the *consideration* was a promissory note which bound no one but him. Even the security given was property of which he, with his wife, was in possession, and hence, presumably the owner. (Hollowell vs. Horter, 11 Casey, 375.) In this case the court say: " After he (the husband) has traded on borrowed capital until he breaks, and puts forward his wife to trade on borrowed capital for his benefit, is a sure way to imperil if not destroy the credit of both, and such arrangements cannot withstand the scrutiny of creditors."

But if any portion of the goods were hers and she is entitled to her own earnings, yet she has intermixed the goods and earnings, and unless she can separate them the creditors of the husband are entitled to all. (Dent vs. Slough, 40 Ala., 518; 2 Bish. Married Women, Sec. 466; Freeman vs. Orser, 5 Duer, 476; Buckley vs. Wells, 42 Barb., 569.) The answer shows the separation to be impossible.

But if Chapter 3130 is constitutional the rights of the creditors are still the same.

1. Of course it does not affect their right to subject the

proceeds of his labor. His inability to transfer to her his labor without consideration does not depend upon the marital relation, but upon the law that one in debt cannot transfer any property to another, without consideration, as against his creditors.

2. Nor does it affect their rights to subject the proceeds of her labor. For, though the statute be constitutional, it will not be construed to affect rights accrued before its passage. These debts were contracted before the passage of the act, and before she was declared a free dealer. At the time of contraction they had a right to the fruits of her labor, and that right cannot be taken away from them. See Edwards vs. Kersey, 6 Otto, 595.

3. Nor does it affect their right to subject his property.

If the statute makes man and wife independent of each other, and subject to ordinary rules as to rights of property as between man and man, still the record shows that the fund in question should be applied to his debts. The fund has been accumulated by the labor of both of them, with money loaned to both of them. They, therefore, became tenants in common of the property. The presumption is, where nothing appears to the contrary, that partners or co-tenants have equal interests in the property they own. Parsons on Part., 258, and n.; 1 Parsons Shipping, 90; Glover vs. Austin, 6 Pick., 209; Ohl vs. Eagle Ins. Co., 4 Mass., 172.

Here the record shows that Mrs. Ward has received more than half, and a court of equity will very properly decree the other half to Ward's creditors. Or regarding her as a professed creditor will give her only what she put in; and she has already drawn out more than that.

There was actual fraud.

Ward's pecuniary situation; his inability to relieve himself; his care to make the seeming change complete, coup-

led with the fact that there was absolutely no change of location, business or *personnel*, except a change of name; that even that change was effected by Ward's credit with his sister and by means of his assuming a new liability by promissory notes, and that there was no change in the object and purposes of the business—being in each case the performance of duties devolving on Ward, and in neither to the benefit of Mrs. Ward, as distinct from her husband —shows a very strong case of actual fraud.

*S. R. Mallory* for Ward *et ux.*

This is an appeal from a decree dismissing complainant's bill on a hearing on bill and answer.

That in such a proceeding the answer is to be accepted as absolutely true. (See 13 Metcalf, 356; Brinckerhoff vs. Brown, 7 John. Chancery, 217; and 2 Conn., 18.) The reason for this is, as Chancellor Kent says, that by setting down for hearing on bill and answer complainant cuts off defendant from the benefit of testimony on issue raised by replication.

That Chapter 3130, Laws of Florida, is constitutional. See Phelena E. Smith vs. Hiram R. Smith, decided at last term of this court.

That the signing of a joint note by two parties is no evidence of a partnership between the parties. (See Hopkins vs. Smith, 11 Johns. Rep., 161.) In their answer both of these defendants assert positively that " all of the money used in the business of Catherine Ward was furnished by her and by none other, and that all that remains in said business is hers and none others."

The money was lent to her, a free dealer, doing business on her own account and in her own name, and while without this assertion, and notwithstanding the fact that James

Ward was insolvent, it might be presumed from the fact of his joining her in signing the note that the money was lent partly, at least, on his credit, it strikes me that in the face of this declaration it is impossible for complainants to successfully contend that James Ward had any interest in that money. Complainant has chosen, by submitting on bill and answer, to shut out all explanation of the signing of that note by James Ward; in so doing he has obliged himself to abide by the effect of the answer, and that effect is to positively negative the presumption that James Ward had any interest in the money that " was borrowed by " defendant, Catherine Ward, from her husband's sister, Miss Catherine Ward, of Providence, Rhode Island.

Complainants claim that the fact that James Ward assisted his wife in her business as a free dealer, without wages, constitutes them partners, is opposed to the fundamental principle of partnership, that there shall be a participation in the profits. The fact that she was a free dealer, under the requirements of our law, separated her entirely from him in the business which she undertook to carry on in her own name, and leaves no room for the presumption that might otherwise grow out of their relation of husband and wife, that his assisting her in her store constituted them partners. The fact that she had been made a free dealer did not relieve him from the moral obligation to do what he could to support his large and helpless family, if he could better do this by aiding her in selling boots and shoes, and at the same time obtain food and clothing for himself, rather than by working for any other dealer on equivalent terms, why should a presumption of partnership arise from his working with her, any more than it would in the case of his working for any other merchant, wholly free and separate from him in business?

THE CHIEF-JUSTICE delivered the opinion of the court.

The bill of complaint of appellants shows that in February, 1880, they recovered a judgment against James Ward, on which execution was returned unsatisfied, and that Ward does not possess visible property subject to levy and sale. Other judgments were recovered against him which remain unpaid.

He was engaged in the business of conducting a shoe store in his own name, with the assistance of his wife as an employee, when sued, and his stock being levied on he surrendered a portion of his goods to a creditor, and thus reduced the value of his stock to less than $1,000, which was claimed as exempted from levy by law ; that his credit being ruined Ward and his wife procured a bill to be filed in chancery under Chapter 3130, Laws of 1879, for the purpose of having her licensed as a " free dealer " by the decree of the Circuit Court, and thereby invested with the power to conduct, in her own name, the business which up to that time had been conducted in the name of her husband, and such decree was made by the court; that she is living with her husband ; that before said decree was made, and at his instance, goods for replenishing the stock were purchased on credit in the name of Mrs. Ward and placed in the business while conducted in his own name, which goods have never been paid for; that immediately upon obtaining said decree by which she claims to have been made a free dealer the business style under which such trade had been conducted was changed to Catharine Ward, and the same business continued in her name at the same place, the remnant of the stock of James Ward having been put in as part of the stock of goods and new goods purchased and put in therewith, purchased on credit or with money obtained from the sale of his old stock, or

money borrowed by James Ward from his, relatives and the business has ever since been carried on by said Ward and his wife as before the change in the name of the con-cern, without the payment of wages to either, and from time to time the said stock has been replenished with goods purchased on credit or with the proceeds of sales of such goods ; that a policy of insurance was effected at the instance of James Ward on the stock, insuring against loss by fire, in the name of Catharine Ward—the premiums were paid out of the proceeds of the business ; that a loss occurred whereby the Liverpool and London and Globe Insurance Company became liable to pay $900, and that the Insurance Company will pay Mrs. Ward unless restrained. A receiver is prayed to collect said insurance money and pay the judgment out of it.

The defendants answer fully, denying all the equities of the bill. They say that the goods of James Ward were not intermingled with the goods purchased by Mrs. Ward with which she is carrying on the business, but were sold at auction and used by him in supporting his family, and none of the proceeds were used in her business. They admit that Mrs. Ward applied to the Circuit Court in chancery to be declared a free dealer, and a decree was made granting her petition, and she is carrying on business under it to maintain their family, the ability of the said James Ward to support them having been destroyed by misfortune; that her first stock of goods was purchased partly with cash and partly on her credit, some money having been borrowed by her on her own responsibility ; that the money was borrowed of Mr. Ward's sister, living in another State, and was secured by her note, also signed by her husband, and by a mortgage on their house and lot in Pensacola ; that there is about $250 due and unpaid on goods purchased by her on credit.

James Ward (her husband) assisted her in carrying on the business. From the proceeds of the business she supported herself and her husband and their large family, and she denies that her husband put anything into the business in the way of capital or stock, or that he has drawn out anything except that he has had his support with the rest of the family.

The cause was set down for a hearing on bill and answer, and the Chancellor thereupon made a decree dismissing the bill. Afterwards, on the application of complainants, leave was given to file a replication without opening the decree of dismissal, and complainants not filing a replication appealed.

They now pray a reversal on the general ground that the decree is erroneous.

Appellants insist that the record shows a case of legal fraud on the part of Ward and his wife, and also a case of fraud in fact.

The first proposition is that the " act to prescribe the manner in which married women who reside in the State of Florida may be authorized to become free dealers," approved March 11, 1879, (Cap. 3130, McClellan's Dig., 756, §13,) is unconstitutional because it vests legislative power in Circuit Judges. The act provides that it shall be lawful for married women who wish to take charge of their estates and to become free dealers to apply to the Circuit Judge in chancery " for a license to take charge of and manage their own estate and property, and to become free dealers." The Judge must make an order referring it to a Master to take testimony and make inquiry as to the capacity, competency and qualifications of the petitioner, and report to the Judge, who, if satisfied as to such capacity and qualifications, may " make an order confirming the report, * * and to grant to the applicant a license in accordance with the prayer of

the petition; and thereupon such applicants shall be authorized and licensed to take charge of, manage and control their estates; to contract and be contracted with, to sue and be sued and to bind themselves in all respects as fully as if such married women were unmarried." The act requires a preliminary notice to be published before filing the petition, and a publication also of the order granting the license, before it becomes operative to enable a married women to act under it.

We are unable to discover in this act any legislative power attempted to be conferred upon judicial officers. The Judge receives a petition in chancery and refers it to a Master, and upon his report coming in, and it appearing to the satisfaction of the Judge that the petitioner has proper qualifications to be a trader on her own account, he makes a decree declaratory of that fact as established by evidence and grants her a license to take charge of her estate and property and to become a free dealer. This "license" is but the decree of the court, to which the statute attaches certain results.

It is urged in argument that this act "undertakes to empower a Judge to say, not what the law is, but what it should be in the future as to the married woman, who shall, in the manner pointed out, put the court in motion," and that the "action" is neither in *rem* nor *in personam*.

The object of the act is to confer upon married women who may desire to become traders and acquire or add to their property the power to do so, and the inquiry and judgment of the Chancellor is invoked for the purpose of ascertaining the capacity and qualifications of the applicant, and to decree upon them as facts, and upon his ascertaining and declaring these the law confers the right or removes the disability of the *feme covert*.

Laws have always been enforced which authorize Chan-

cellors and other Judges to inquire into the sanity and capacity of men and women to manage their own affairs, and take from them the control of their property. Laws have always been enforced authorizing Judges and courts to grant "licenses" to sell property of infants and lunatics and deceased persons. The divorce laws authorizing courts to establish the present and future status of men and women and of their property, and to award the custody and control of children, and the estates and property of children, have uniformly been recognized as constitutional.

These and other similar matters have been, by the Legislature, committed to the courts for judicial action, the effect of such action being declared by the Legislature; and in such affairs the Legislature "undertakes to empower a Judge to say" not only "what the law is," but what the status of persons and property "shall be in the future" as to them.

It is not the Judge but the law that confers the right or removes the disability. The Judge but finds the facts and certifies them, and in whatever form the certificate or decree may be it is the law which gives the effect to it.

The error of the argument is that the act does *not* confer upon the Judge the power to declare what the law "shall be in the future," but its purpose is solely to empower the Judge to declare the status of married women, to whom the law extends certain privileges and upon whom it imposes certain obligations, to-wit: the privilege of buying, selling and trading, to acquire money and property and to protect it in her own name, and the liability to be sued and to be bound by their contracts as if they were unmarried.

This is the effect given by the Legislature to the facts found by the court, which the judgment or decree does not give, but which the law confers. We do not, therefore, find that the act in question is unconstitutional.

The intention of the Legislature evidently is to give to the married woman the power to acquire property by her own labor, skill and credit, and to become personally indebted by borrowing, buying and trading, subjecting herself to the penalties of violating her contracts and securing to herself, free from the control of her husband, the fruits of her labor and skill as a trader.   And a further result is that such gains are not liable to be subjected to the claims of the husband's creditors. if she is acting in good faith.

In this case the answer, which is not controverted, shows that none of the goods or money of Mr. Ward were used in creating or supplying the stock of goods, or in conducting the business carried on by Mrs. Ward.  She borrowed some money for the purpose of buying the goods in the first instance from Miss Ward, her husband's sister, living in another State, which was secured by a mortgage on the house she lived in, her husband signing the note with her.

It is claimed that the debt having been contracted by the husband before Mrs. Ward became a sole trader, and the husband being then entitled to her services and the fruits of her labor, it is a fraud upon the creditor now to give her the benefit of her own enterprise and labor freed from the creditors's claims.   The law, as expounded by the courts, does not go so far as this.   It is not a case where property *in esse* has been placed beyond the ordinary reach of execution.   The creditor had no claims upon the skill of the wife of the debtor, had no right to demand or to expect that she would engage in trade for their benefit, and it is not apparent that Mrs. Ward is carrying on business in her own name as a cover to protect his capital and accumulations from the creditors of her husband.

This is denied expressly by both the defendants, and the statements of fact in the answer disprove it.

But it is insisted by appellants that Mr. Ward signed

with his wife the note upon which the money was borrowed, and that he has assisted her in conducting the business, and therefore he is necessarily a part owner, if not a partner, in the goods and profits. The answer shows, however, that the borrowing of the $500 was her own contract, the proceeds put into her business, and that he assisted her and had his support with the rest of the family out of the proceeds of the business, and has never drawn any money out of it for his own use. It is not shown that his services were worth more than his subsistence, or that he was even capable of earning more.

In Michigan, under a law similar to our married woman's act of 1845, it was decided that a married woman may carry on business in her own name, and for that purpose may make herself liable for a purchase of property on credit. (Tillman vs. Stockton, 15 Mich., 447.) We held in Blumer and Wife vs. Pollok & Co., at the last term, that the wife's separate property might be subjected in equity to her engagements made on account of it. Judge Cooley, in delivering the opinion of the court in Rankin vs. West, 25 Mich., 200, says that if the wife may so make herself liable "there is no reason in law why her husband may not be her agent for this purpose; and if the husband, by reason of financial embarrassments, is unable to carry on business and support his family in his own name, it would be remarkable if this should be held to constitute any impediment to the wife's engaging in business for that purpose. It would seem, on the other hand, to constitute a very laudable motive for her doing so. * * * If this property would never have come to the possession of either Mr. or Mrs. West except in pursuance of an understanding that she should be the purchaser and carry on business by means of it, we cannot see how such a purchase can wrong his creditors; they have every remedy against him which

they had before, and cannot reasonably complain that the wife chooses to make her own arrangements so that her husband's debts shall not be enforced against her purchases. And having thus a right to buy property and carry on business, it cannot form the subject of complaint that she purposed to keep the property beyond the reach of the husband's creditors; that purpose, if the property was hers, was fraudulent neither in law nor in fact." See also Brown vs. Pendleton, 60 Pa. St., 419; Knapp vs. Smith, 27 N. Y., 277.

If the wife has a separate estate she may employ the husband and compensate him for his services. Bump on Fraudulent Con., 246, 247.

Where property is purchased by a wife in her own name, the business being done by her husband and a son-in-law, and the wife and her husband gave their notes for the price, the son-in-law paying a part of the note and another person paying the balance, the husband paying nothing, this did not make the property liable to the husband's debts. (Ratcliffe vs. Collins, 35 Miss., 581.) Suspicions of fraud may in these circumstances arise, but in the absence of fraud proven there appears to be no legal reason why a husband may not sustain the same relation to his wife as any other person who helps her with his credit. And especially where no reliance is placed on the husband's name; the note being secured by a mortgage, there is no interest liable to be reached by creditors. 2 Bishop Law of Mar. & Div., §§86, 87, and authorities there cited.

While it is generally held in cases where the money, labor and skill of the husband are so mixed up with that of the wife that they cannot be separated, the property acquired by them may be liable to be subjected to the debts of the husband, at least to the extent that his interest can be ascertained, yet such is not this case upon the pleadings.

The answer responding to the charges of the bill and not controverted is taken to be true. Mr. Ward had put no money or property into the business carried on by his wife. She is a sole trader under the statute, capable of contracting on her own account. She borrowed money on her own account and bought goods on her own credit and money, and commenced mercantile business on her own account, and has paid for goods and bought more out of the proceeds. She entered into the business because of the utter failure of her husband to maintain his credit. Her husband is employed to assist in selling boots and shoes, having no capital invested in the stock, but merely as an employee, and as to the wife in that capacity he is as any other person who might be employed by her. He is not a partner. If his services have produced profits in the business, so would the services of any capable clerk do the same. If he has earned anything more than his board and clothes it is not shown by the bill, and if we may judge from the past history of his business life as given by the pleadings the amount due him is incapable of demonstration.

That he joined his wife in a $500 note to borrow money for her use and has not paid a cent of it, the money having been borrowed by her for her separate use and not upon his credit, she being a sole trader, is not enough to show either fraud or that he has an interest in the goods or the profits she has made in her trade over and above supporting her husband and their family. In the language of Judge Cooley, having the right to carry on business and buy property, it cannot be the subject of complaint if she endeavors to prevent her husband's creditors from seizing it for debts he is unable to pay. Nor can we discover how his creditors are wronged by her buying goods on her own credit or paying for them with borrowed money, even if she is more successful in the management of it than her husband had been. The decree is affirmed.