## MacDONALD v. TEFFT–WELLER CO. et al.

(Circuit Court of Appeals, Fifth Circuit. March 1, 1904.)

### No. 1,325.

**1. BANKRUPTCY—MARRIED WOMEN—OBLIGATIONS—"DEBTS."**

Since the separate property of a married woman residing in Florida, under the laws of that state, is liable in equity for her business obligations, where she is engaged in business on her own account, though not a free trader, such obligations constitute debts, within Bankr. Law, § 1, Act July 1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3419], defining the term "debt" to include any debt, demand, or claim provable in bankruptcy, and section 63 (30 Stat. 562 [U. S. Comp. St. 1901, p. 3447]),

declaring that debts of a bankrupt may be proved and allowed against his estate which are founded on an open account, or on a contract, express or implied.

2. SAME.

Bankr. Law, § 4, cl. "a," Act July 1, 1898, c. 541, 30 Stat. 547 [U. S. Comp. St. 1901, p. 3423], providing that any person owing debts, except a corporation, shall be entitled to the benefits of the act as a voluntary bankrupt, and clause "b," providing that any natural person, except a wage-earner and certain others, owing debts to the amount of a thousand dollars or over, may be adjudged an involuntary bankrupt, authorizes the adjudication of a married woman as an involuntary bankrupt, where she was engaged in business on her own account, and owed business obligations of the amount required by the statute, for which her separate property was liable in equity.

Petition for Revision of Proceedings in the District Court of the United States for the Southern District of Florida, in Bankruptcy.

Involuntary proceedings were commenced in the court below by filing the following petition:

"To the Honorable James W. Locke, Judge of the District Court of the United States for the Southern District of Florida: The petition of the Tefft-Weller Company, a corporation organized and existing under the laws of the state of New York, and Frederick A. Constable, Alfred G. Evans, and the estate of Hicks Arnold, partners doing business as Arnold, Constable & Company, and John T. Sherman and Charles A. Sherman and Aaron L. Reid, partners doing business as Sherman. Reid & Company, all of the city of New York and state of New York, respectively shows that Ruth E. MacDonald is a married woman, who, with her husband, M. G. MacDonald, has for many years resided in the city of Jacksonville, Duval county, Florida, and is a citizen and resident of said city, county, and state; that the said Ruth E. MacDonald for several years preceding the filing of this petition has been engaged in the business of buying, selling, and trading in dry goods, millinery, notions, bric-a-brac, and other goods, wares, and merchandise in the city of Jacksonville, Duval county, Florida, and has conducted said business in her own name, under the style of Mrs. M. G. MacDonald; that the said business, and said goods, wares, and merchandise, store, and office fixtures and furniture and store accounts are her separate personal property, and that the amounts due by said Ruth E. MacDonald in the conduct of said business to petitioners, hereinafter referred to, were incurred by her for the purchase price of the personal property, to wit, stock of goods in the store and business of said Ruth E. MacDonald, and went to the increase of her separate personal property, and that she therefore charged her separate property with the payment of the same; that the said Ruth E. MacDonald has for the greater portion of six months next preceding the date of filing this petition had her principal place of business and resided in the city of Jacksonville, Duval county, Florida, and the district aforesaid, and owes debts to the amount of one thousand dollars; that your petitioners are creditors of said Ruth E. MacDonald, having provable claims amounting in the aggregate, in excess of securities held by them, to the sum of five hundred dollars; that the nature and amount of your petitioners' claim are as follows: That the claim of the Tefft-Weller Company consists of an open account for the sum of two hundred and thirty-seven and $21/100$ dollars ($237.21), and is for goods, wares, and merchandise sold and delivered by said the Tefft-Weller Company to said Ruth E. MacDonald, doing business as Mrs. M. G. MacDonald; that said goods, wares, and merchandise, so sold and delivered by said the Tefft-Weller Company to said Ruth E. MacDonald, went to the increase of her separate personal property, and she thereby charged her separate property with the payment of the same; that the claim of Frederick

¶ 2. What persons are subject to bankruptcy laws, see note to Maltoon Nat. Bank v. First Nat. Bank, 42 C. C. A. 4.

A. Constable, Alfred G. Evans, and the estate of Hicks Arnold, partners doing business as Arnold, Constable & Company, consists of an open account for the sum of three hundred and thirteen and $^{12}/_{100}$ dollars ($313.12), and is for goods, wares, and merchandise sold and delivered by said Arnold, Constable & Company to said Ruth E. MacDonald, doing business as Mrs. M. G. MacDonald; that said goods, wares, and merchandise, so sold and delivered by said Arnold, Constable & Company to said Ruth E. MacDonald, went to the increase of her separate personal property, and she thereby charged her separate property with the payment of the same; that the claim of John T. Sherman and Charles A. Sherman and Aaron L. Reid, partners doing business as Sherman, Reid & Company, consists of an open account for the sum of one hundred and eighty one and $^{1}/_{100}$ dollars ($181.01), and is for goods, wares, and merchandise sold and delivered by said Sherman, Reid & Company to said Ruth E. MacDonald, doing business as Mrs. M. G. MacDonald; that said goods, wares, and merchandise, so sold and delivered by said Sherman, Reid & Company to said Ruth E. MacDonald, went to the increase of her separate personal property, and she thereby charged her separate property with the payment of the same. And your petitioners further represent that the said Ruth E. MacDonald, doing business as Mrs. M. G. MacDonald, is insolvent, and that within four months next preceding the date of filing this petition the said Ruth E. MacDonald committed an act of bankruptcy, in that she did heretofore, to wit, of the 26th day of May, 1903, while insolvent, execute and deliver to the Mercantile Exchange Bank, a corporation organized and existing under the laws of the state of Florida, and a creditor of the said Ruth E. MacDonald, doing business as Mrs. M. G. MacDonald, a chattel mortgage for forty-four hundred dollars ($4,400.00), on the lease of Ruth E. MacDonald, in the name of Mrs. M. G. MacDonald, to store number 102 West Forsyth street, in the city of Jacksonville, Duval county, Florida, and all of the personal property of said Ruth E. MacDonald, under the name of Mrs. M. G. MacDonald, therein contained, consisting, among other things, of dry goods, millinery, notions, bric-a-brac, vases, art household furnishings, and other merchandise and stock in trade, kept and exposed for sale in said storeroom, and also all office and store fixtures and furniture, safe, shelves, show cases, and furnishings, and also all such other personal property in said storeroom contained, said property being described in said mortgage as 'being the separate statutory property of the said Ruth E. MacDonald,' and that thereafter, to wit, on the 27th day of May, 1903, the said mortgage was recorded in the public records of Duval county, Florida, in Mortgage Book 11, at page 273; that said mortgage was given for the purpose and with the intent of securing and preferring the said Mercantile Exchange Bank over other creditors of the same class of the said Ruth E. MacDonald; that the effect of the enforcement of such mortgage will be to enable the said Mercantile Exchange Bank, one of the creditors of the said Ruth E. MacDonald, to obtain a greater percentage of its debt than any other of such creditors of the same class. Wherefore," etc.

Mrs. MacDonald appeared by counsel, and filed demurrer to the foregoing petition on the following grounds:

"(1) There are not three or more citizens of the alleged bankrupt petitioners in the above-entitled petition; (2) that there are not three petitioners, creditors of the alleged bankrupt, parties to the above-mentioned petition; (3) that the 'Estate of Hicks Arnold' cannot be a party to this cause in such words; (4) that a partnership consisting partly of the 'Estate of Hicks Arnold' cannot be one of the three petitioners required by law in a petition for an involuntary adjudication in bankruptcy; (5) that a married woman residing in Florida cannot be adjudicated a bankrupt; (6) that there is no personal liability for her obligations resting upon a married woman residing and doing business within the state of Florida, which obligations would be enforceable against her, and that a married woman cannot be adjudicated a bankrupt; (7) that in this court a married woman not a free dealer cannot be adjudicated a bankrupt."

The court below overruled the demurrer, and this court is asked to revise the proceedings on the following grounds:

"That a married woman residing in Florida cannot be adjudicated a bankrupt; that there is no personal liability for her obligations resting upon a married woman residing and doing business within the state of Florida, which obligations would be enforceable against her, and that a married woman cannot be adjudicated a bankrupt; that in this court a married woman not a free dealer cannot be adjudicated a bankrupt."

Francis P. Fleming, Francis P. Fleming, Jr., and Wm. B. Owen, for petitioner.

Charles M. Cooper and John C. Cooper, for respondents.

Before PARDEE, Circuit Judge, and SPEER and NEWMAN, District Judges.

PARDEE, Circuit Judge (after stating the facts as above). The question presented is whether, under the facts alleged in the petition in this case, a married woman in the state of Florida, having separate statutory property, and engaging in trade, buying, and selling on her own account, but not a free dealer, can be adjudicated a bankrupt under the bankrupt law of 1898.

Under sections 1505–1509, Rev. St. Fla. 1892, a married woman may have her disabilities removed, and she may have a license as a free dealer authorized to contract, sue, and be sued, and in all respects to bind herself as if she were unmarried. See Martinez v. Ward, 19 Fla. 175.

By article 11 of the Constitution of the state of Florida of 1885 it is provided:

"Section 1. All property, real and personal, of a wife owned by her before marriage, or lawfully acquired afterwards by gift, devise, bequest, descent, or purchase, shall be her separate property, and the same shall not be liable for the debts of her husband without her consent given by some instrument in writing, executed according to the law respecting conveyances by married women.

"Sec. 2. A married woman's separate real or personal property may be charged in equity and sold, or the uses, rents and profits thereof of sequestrated for the purchase money thereof; or for money or thing due upon any agreement made by her in writing for the benefit of her separate property; or for the price of any property purchased by her, or for labor and material used with her knowledge or assent in the construction of buildings, or repairs, or improvements upon her property, or for agricultural or other labor bestowed thereon, with her knowledge and consent.

"Sec. 3. The Legislature shall enact such laws as shall be necessary to carry into effect this article."

It does not appear that there has been any legislation under section 3 of said article, but "it is well settled," says the Florida Supreme Court in First National Bank of Pensacola v. Hirschkowitz, 35 South. 22:

"In an unbroken line of decisions, beginning with Lewis v. Yale, 4 Fla. 418, down to the present time, this court has held that 'a feme covert is not competent to enter into contracts so as to give a personal remedy against her.' As was said in Dollner v. Snow, 16 Fla. 86: 'At common law the promissory note of a married woman is void. The Constitution and statute of this state make no change in this respect. Neither at law nor in equity can she bind herself so as to authorize a personal judgment against her.' Under the rule laid down in these decisions, appellants could not have proceeded at law against the said married woman, Dora Hirschkowitz, and hence could not have

reduced their claims to judgment; also see Crawford v. Feder, 34 Fla. 397, 16 South. 287."

In the headnotes to this report, which in Florida are prepared by the judges, No. 1 reads as follows:

"At common law the promissory note of a married woman is void. The Constitution and statutes of this state make no change in this respect, unless said married woman shall have been made a free dealer. Neither at law nor in equity can she bind herself so as to authorize a personal judgment against her."

### The court further says:

"It is also the settled law of this state that 'where a married woman carries on business in her own name, having property employed in such business, and purchases goods upon her sole credit for the purpose of such business, her separate property may be subjected in equity to the payment of claims for money due for such purchases.' Blumer v. Pollak, 18 Fla. 707. Also see Staley v. Hamilton, 19 Fla. 275; Garvin v. Watkins, 29 Fla. 151, 10 South. 818; Halle v. Einstein, 34 Fla. 589, 16 South. 554. In Crawford v. Gamble, 22 Fla. 487, it was held that 'merchandise purchased by a married woman who is conducting a mercantile business in her own name is her separate statutory property.'"

From these references to the law in Florida it appears that a married woman having separate statutory property, although not a free dealer, can lawfully carry on business, buy and sell upon her sole credit, and thus contract obligations binding upon her property in all respects as if she were a feme sole, except that she cannot be held personally liable at law; the creditors' legal remedy upon her contracts being in equity, under which all her separate property may be taken. That is to say, that such married woman may contract a debt which she morally owes—owes in equity and good conscience, lawfully owes—but which she cannot be personally adjudged to pay.

Is the limited obligation thus resulting a "debt," within the meaning of the word as used in section 4 of the bankrupt law of 1898? Clause "a," § 4, Bankr. Law, July 1, 1898, c. 541, 30 Stat. 547 [U. S. Comp. St. 1901, p. 3423], provides that "any person who owes debts, except a corporation, shall be entitled to the benefits of this act as a voluntary bankrupt." Clause "b" provides that "any natural person, except a wage earner, or a person engaged chiefly in farming or the tillage of the soil, any unincorporated company, and any corporation engaged principally in manufacturing, trading, printing, publishing, mining, or mercantile pursuits, owing debts to the amount of one thousand dollars or over, may be adjudged an involuntary bankrupt upon default, or an impartial trial, and shall be subject to the provisions and entitled to the benefits of this act." Blackstone defines a "debt" as follows: "A sum of money due by certain and express agreement, as by bond for a determinate sum, a bill or note, a special bargain, or a rent reserved on a lease, where the amount is fixed and specific, and does not depend upon any subsequent valuation to settle it." 3 Bl. Com. 154. Again: "Any contract, in short, whereby a determinate sum of money becomes due to any person and is not paid, but remains in action merely, is a contract of debt." 2 Bl. Com. 464. "The word 'debt' is of large import, including not only debts of record or judgments and debts by specialty, but also

128 F.—25

obligations arising under simple contract to a very wide extent, and in its popular sense includes all that is due to a man under any form of obligation or promise." Gray v. Bennett, 3 Metc. (Mass.) 522, 526; Shane v. Francis, 30 Ind. 93. "A 'debt' signifies whatever one owes. There is always some obligation that it shall be paid, but the manner in which, or the condition upon which, it is to be paid, or the means of recovering payment, do not enter into the definition." Rodman v. Munson, 13 Barb. 197. "A debt is a sum of money due by contract, express or implied." Perry v. Washburn, 20 Cal. 350. Section 1 of the bankrupt law of July 1, 1898, c. 541, which gives the meaning of words and phrases used in the act, provides in paragraph 11 (30 Stat. 544 [U. S. Comp. St. 1901, p. 3419]), "'debt' shall include any debt, demand or claim provable in bankruptcy," and section 63 (30 Stat. 562 [U. S. Comp. St. 1901, p. 3447]), relating to debts which may be proved, provides as follows: "Debts of the bankrupt may be proved and allowed against his estate which are * * * (4) founded upon an open account or upon a contract express or implied."

These broad definitions of "debt" from the text-books, adjudicated cases, and the bankrupt law all clearly include the obligation lawfully contracted by a married woman, not a free dealer, in the state of Florida, dealing with her separate estate.

We are referred to no adjudicated cases on the question as to whether a married woman can be adjudicated a bankrupt under the present law—all the cases cited are under other and former laws.

The English cases cited, and much relied on by counsel for petitioner (Ex parte Jones, In re Grissel, 12 Chan. Div. 484, and In re Gardiner, Ex parte Coulson, 20 Q. B. Div. 249), lose much of their force here, because the married women's property act, 45 & 46 Vict., provides: "Every married woman carrying on a trade separately from her husband shall, in respect of her separate property, be subject to the bankruptcy laws in the same way as if she were a feme sole." And section 152 of the bankruptcy act provides: "Nothing in this act shall affect the provisions of the married women's property act 1882."

In In re Kinkead, 3 Biss. 405, Fed. Cas. No. 7,824, a case decided under the law of 1867, wherein it was held that a married woman residing in Illinois could be adjudicated a bankrupt, seems to have turned upon the laws of Illinois with regard to the rights of married women. In the note by the learned reporter in that case many of the current decisions in this country and in England are reviewed, and the reporter sums up as follows:

"Impossible as it may be to reconcile the decisions on the general question of the rights and liabilities of married women, the duty of the federal courts in administering the bankrupt act would seem to be simply to determine the status of a married woman under the existing laws of the state where the jurisprudence is to be exercised, and administer the act upon the basis of the principles thus discovered. The foundation of bankruptcy proceedings is indebtedness; but the bankrupt act does not make any new standard of liability—it simply operates upon those already existing. The application of the act to married women depends, clearly, not upon their rights, but their liabilities, and those liabilities are determined by the law of the forum where the jurisdiction is invoked."

From what has been said, it follows that we do not agree with the learned counsel, whose able oral argument and exhaustive brief have received our close attention, that the test is whether the contracts of an alleged bankrupt can be enforced by judgment in personam, but rather is whether the said contracts constitute an existing indebtedness.

The object of the bankrupt law is twofold—the benefit of the creditors and the relief of the bankrupt. Mr. Justice Story describes a bankrupt law as "a law for the benefit and relief of creditors and their debtors in cases in which the latter are unable or unwilling to pay their debts." 2 Story, Const. § 1113, note 2. Mr. Stephen speaks of it as "a system of law of a peculiar and anomalous character, intended to afford to the creditors of persons engaged in trade a greater security for the collection of their debts than they enjoyed at common law under the ordinary remedy by action." 2 Steph. Com. 189. It cannot be necessary that both objects shall be attainable in order to warrant proceedings in bankruptcy. In many, perhaps a majority, of cases, the relief to the bankrupt is the only question, for there are no assets to distribute, and in many other cases the benefit and relief of creditors is the only object. A bankrupt may through fraud have lost his right to a discharge. An insolvent corporation whose property, including all franchises, has been distributed to creditors in involuntary proceedings in bankruptcy, takes little, if anything, by a discharge.

But this can be said for the petitioner that, if she is discharged in bankruptcy, and thereafter she is sued at law or in equity, she can plead the discharge in bankruptcy as well as coverture, and with regard to after-acquired separate property she will be relieved from all her present obligations. The legal as well as the general trend of the day is towards emancipating women, married or single, from all legal and other disabilities not bearing on the other sex, and particularly in all directions wherein she is thought to be handicapped in earning a living, taking care of her property, or carrying on business. And if a married woman is encouraged and permitted to carry on business, buy and sell—in short, be a trader, as she is in Florida—why, when she is unfortunate in business and burdened with debts, shall she not, like the married man, be entitled to claim and have her debts wiped from the slate under the more or less wise provisions of the bankrupt law?

On the whole matter, we conclude that neither the terms nor the policy of the bankrupt law of 1898, nor any outside public policy, preclude, because of coverture, a woman owing debts exigible against her property from being adjudicated a bankrupt; and it follows that the question stated at the beginning of this opinion must be answered in the affirmative, and that this petition for revision be denied.

And it is so ordered.