F. G. McMULLEN, L. L. CARLTON and D. E. AUSTIN, as Supervisors of North St. Lucie River Drainage District, *Appellants,* v. NEWMAR CORPORATION, a Corporation Under the Laws of the State of Florida, et al., *Appellees.*

Division B.

Opinion filed August 4, 1930.

*G. P. Garrett,* for Appellants;

*Quincey & Rice* and *Dame & Rogers,* for Appellees.

### STATEMENT

Newmar Corporation and others, owners of lands in North St. Lucie River Drainage District filed a suit in equity against the tax collector of St. Lucie County, the supervisors of North St. Lucie River Drainage District and others, in which it is alleged that the said supervisors have levied a drainage tax or assessment against described lands of the, complainants for the years 1928 and 1929; that said supervisors:

"Threaten and intend to levy a like annual tax respectively for the year 1930 and for each of the succeeding years during the life of the bonds hereinafter referred to and described; that the said supervisors have prepared a total tax levy against your orator's lands and other lands, in said district in a book endorsed and named 'Drainage Tax Book, year 1929, North St. Lucie River Drainage Dist., St. Lucie County, Florida,' containing a list of the total drainage taxes levied against the lands herein described, and said book has been filed in the office of the clerk of the Circuit Court of St. Lucie County, Florida, by the said supervisors, and they have prepared a certificate and table of the annual taxes levied against your orators' lands and against the lands of the other property owners in said district in the form of a bound

book endorsed and named 'Drainage Tax Book, North St. Lucie Drainage District, St. Lucie County, Florida, for the year 1929, and that for and during the years 1918 and 1920, to 1929, inclusive, said North St. Lucie River Drainage Drainage District Tax Book has been delivered to defendant, F. M. Tyler, tax collector of St. Lucie County, Florida, and the said tax collector is now attempting to collect from your orators and from the other land owners in said drainage district the drainage taxes aforesaid; that the lands embraced in the district did not constitute a contiguous body of water or overflowed lands or lands subject to overflow on the date of the organization of the said drainage district, but on the contrary, a large percentage of said lands, including a large part of the lands belonging to your orators was high and dry, and said high and dry lands were not and cannot be benefited directly or indirectly by drainage improvements and said high and dry lands were included within the drainage district solely for the purpose of deriving revenue for the levying and collection of taxes thereon for the benefit of other lands which might perchance be improved by drainage; that the petition filed under the statute for the formation of the district was not signed by the Board of Drainage Commissioners of the State of Florida, nor by a majority of the owners of said land, nor by the owners of a majority of the acreage or said land, and the circuit court was without jurisdiction to entertain such petition or to enter any decree thereon; that there are within the boundary lines of the North St. Lucie River Drainage District approximately 75,-000 acres of land. That the petition for the formation of said district, insofar as said petition shows, was signed by the owners of only 581 acres of land in said

district. That there was not presented to the court upon the hearing of said application for incorporation of said district any legal evidence of any kind or character to show or to indicate that the owners of a majority acreage in said district had signed said petitions, nor was there introduced before said court any legal evidence of any kind or character to show that any signer of said petition owned any land whatsoever in said district at the time of the said final decree was rendered, incorporating the district aforesaid; that on the 7th day of November, A. D. 1917, the court, without jurisdiction of the subject matter or of the parties and without hearing any evidence whatsoever as to the law with reference to the incorporation of drainage districts having been complied with, entered a decree establishing said district.''

There are other allegations designed to show illegality in the statute, Chapter 6458, Acts of 1913, under which the district was formed and to show illegality in the action taken in forming the district and in issuing bonds to be paid by taxation here sought to be enjoined.

The prayer is that the formation of the district be decreed to be invalid and a cloud upon the title of complainant's lands in the district; that the tax assessments be declared invalid and canceled, and the collection of the taxes enjoined.

A demurrer of the supervisors to the bill of complaint was overruled. The supervisors filed a joint and several answer controverting the allegations of the bill of complaint and adducing two statutes validating the administrative acts complained of. An examiner was appointed to take testimony on the issues raised by the bill and answer. An appeal was taken by the supervisors from the order overruling their demurrer to the bill of complaint and

from the order appointing an examiner to take testimony.

Among the provisions of Chapter 6458, Acts 1913, are the following:

"Section 1. The Board of Drainage Commissioners of this State, or a majority, either in numbers or in acreage, of the holders of any contiguous body of, wet or overflowed lands, or lands subject to overflow, situate in one or more counties in this State, may form a drainage district for the purpose of having such lands reclaimed and protected from the effects of water, for sanitary or agricultural purposes, or when the same may be conducive to the public health, convenience or welfare, or of public utility or benefit, by drainage or otherwise, and for that purpose the said Board of Drainage Commissioners, or a majority of the owners, or the owners of a majority of the acreage of said lands, may make and sign a petition, in which shall be stated; the name of the proposed drainage district and the number of years the same is to continue; the boundary line of the proposed drainage district; the names so far as known, and the last known post office address, of the owners of lands or other property in said district, together with a general description of the lands and the approximate number of acres owned by each; when the name or post office address of the owner of any said lands or other property is unknown this fact shall be set out in said petition; said petition shall further state that the owners of the lands within said district whose names are subscribed to said petition are willing to and do obligate and bind the lands owned by them situated in the proposed drainage district to pay the tax or taxes which may be assessed against their respective lands to pay the expense of organizing and of making

and maintaining the reclamation of said lands, so formed into a drainage district, and to drain and protect the same from the effects of water, and said petition shall contain a prayer, asking that the lands described therein be declared a drainage district under the provisions of this Act; said petition may be signed by the Board of Drainage Commissioners, or by a majority of the owners, or the owners of a majority of the acreage of said lands, or same may be signed by both said commissioners and owners of lands. After said petition has been so signed, the same shall be filed in the office of the clerk of the circuit court of the county in which such lands or the greater part thereof are situate.

''Sec. 2. Immediately after such petition shall have been filed, the clerk in whose office the same has been filed, shall give notice by causing publication to be made once a week for four consecutive weeks in some newspaper published in each county in which lands and other property described in the petition are situate, and said notice shall be substantially in the following form:

## NOTICE OF APPLICATION TO FORM A DRAINAGE DISTRICT

Notice is hereby given to all persons interested in the following described lands in . . . . . . . . . County, Florida, viz: (Here describe the property as set out in the petition) . . . . . . . . . . . . that a petition asking that the foregoing lands be formed into a drainage district under an Act of the legislature, entitled '(here insert title of Act.' Approved . . . . . . . . . . . 1913, has been filed in this office, and that the foregoing lands will be affected by the formation of said drainage

district and rendered liable to taxation for the purpose of paying the expenses of organization, and making and maintaining the improvements that may be necessary to affect the reclamation of the lands included in such district, and you and each of you are hereby notified to appear on the first rule day accruing not less than twenty days after this notice has been published for four weeks as required by said Act, at the office of the Clerk of the Circuit Court of............ County, and show cause, if any there be, why said drainage district as set forth in said petition shall not be organized as a public corporation of the State of Florida.

Date of first publication.............., 191..

.............................................

Clerk of the Circuit Court of.................... County, Florida.

The certificates of the Clerk or the affidavit of another, with a copy of said notice affixed, showing that said notice has been published as required by this Act, shall be sufficient evidence of such fact.

The Circuit Court of the County in which said petition has been filed shall thereafter maintain and have original and exclusive jurisdiction, co-extensive with the boundaries and limits of said districts, without regard to county lines, for all purposes of this Act.

Sec. 3. Any owner of lands in said proposed district who may not have signed said petition, may appear on or before the rule day stated in said notice and advocate or resist the organization and incorporation of said drainage district; if he shall desire to resist the establishment of the district, he shall file his objection in writing stating therein his reasons why the said drainage district should not be organized or

incorporated or why his lands or any part thereof should not be included therein or he may deny the statements in said petition. Such objections, if any there be, shall be heard by the court either in term time or vacation in a summary manner, without unnecessary delay, on a day to be named by the Court or Judge thereof, upon application of the petitioners or any of those signing the said petition. Upon the hearing, which may be adjourned from time to time for good cause shown, of the said objections, if any have been filed, if the court shall be of the opinion that the establishment of the said drainage district and the improvements to be made thereunder will be for the advantage of the owners of the real property therein or that the same would be in the interest of the public health, convenience or welfare, he shall overrule said objections; and, in case all such objections are overruled, or in case no such objections have been filed, the court thereupon shall, by its order duly entered of record, declare and decree said drainage district a public corporation of this State, for a term not exceeding the time mentioned in the said petition; Provided, That no drainage district shall be established or consolidated under any provisions of this Act until there shall have been first obtained the written approval or consent of the owner or owners of a majority in acreage of the lands within said district. If the court finds that the lands set out in said petition should not be incorporated into a drainage district, it shall dismiss said proceedings and adjudge the cost against the said petitioners in proportion to the acreage represented by each. Any person having signed the petition shall have no right to have such proceeding dismissed as to him without the written consent of the majority

in acreage of the other owners who signed said petition. The petition may be amended as any other pleading. Immediately after the said district has been declared a corporation by the court, the clerk thereof shall transmit to the Secretary of State a certified copy of the findings and decree of the court incorporating said district, and the same shall be filed in the office of the Secretary of State. A copy of said findings and decree together with a plat of the district, shall also be filed in the office of the clerk of the circuit court in each of the counties having land in said district, where the same shall become a permanent record and each such clerk shall receive a fee of $1.00 for filing and preserving the same.''

The validating provisions of Chapter 7973, Acts 1919, and Chapter 8896, Acts 1921, referred to in the answer of the supervisors are as follows:

''Section 1. That all of the proceedings taken for the creation, establishment and organization of North St. Lucie River Drainage District in St. Lucie County, Florida, and all of the acts and proceedings taken by, for and on behalf of said districts since the creation thereof, and all of the acts and proceedings of the Board of Supervisors and all other officers and agents of said North St. Lucie River Drainage District, acting for and on behalf of said district in carrying out the affairs of said district; and any and all tax levies and assessments which have been made by the Board of Supervisors of said North St. Lucie River Drainage District for and on behalf of said District upon the taxable property located within said district, be and they are each and every one of them, and each and

every part thereof, hereby ratified, approved, validated and confirmed.'' Chapter 7973, Acts 1919.

''Section 4. That all of the acts and proceedings of the Board of Supervisors, the commissioners, and all other officers and agents of North St. Lucie River Drainage District acting for and on behalf of said district, in carrying out the affairs of said district and the bonds of said district of the par value of $1,200,000.00, bearing date of May 1st, 1920, bearing interest at the rate of six per cent. per annum, payable semi-annually, and any and all tax levies and assessments which have been made by the Board of Supervisors of said North St. Lucie River Drainage District for and on behalf of said district upon the taxable property located within said district, be, and they are each and every one of them, and each and every part thereof, hereby ratified, approved, validated and confirmed.'' Chapter 8896, Acts 1921.

''The powers of the government of the State of Florida shall be divided into three departments; Legislative, Executive and Judicial; and no person properly belonging to one of the departments shall exercise any powers appertaining to either of the others, except in cases expressly provided for by this Constitution.'' Article II, Constitution of Florida.

WHITFIELD, P. J.—In this suit to invalidate the North St. Lucie River Drainage District and to enjoin the collection of drainage taxes in the district, it is contended that the formation of the district was not in accordance with the statute, Chapter 6458, Acts 1913; that the statute is invalid because it requires the circuit court to perform legislative functions in forming drainage districts under the statute, thereby conferring legislative powers upon the courts in violation of Article II of the State Constitution;

and that the validating statutes adduced by the defendants are inoperative to make effective the illegalities in Chapter 6458 and in the action taken thereunder in forming the North St. Lucie River Drainage District and in making the tax assessments against the lands in the district.

The statute requires upon the filing of a stated petition for the formation of a drainage district, an official publication of a notice to "persons interested in the" lands proposed to be formed into the drainage district, to appear before the circuit court, "and show cause, if any there be, why said drainage district as set forth," "shall not be organized as a public corporation of the State of Florida;" that "any owner of lands in said proposed district, who may not have signed said petition, may appear   *   *   * and advocate or resist the organization and incorporation of said drainage district;"

> "If he shall desire to resist the establishment of the district, he shall file his objection in writing stating therein his reasons why the said drainage district should not be organized and incorporated or why his lands or any part thereof should not be included therein or he may deny the statements in said petition. Such objections, if any there be, shall be heard by the court either in term time or vacation in a summary manner, without unnecessary delay, on a day to be named by the court or judge thereof, upon application of the petitioners or any of those signing the said petition. Upon the hearing, which may be adjourned from time to time for good cause shown, of the said objection, if any have been filed, if the court shall be of the opinion that the establishment of the said drainage district and the improvements to be made thereunder will be for the advantage of the owners of the real property therein or that the same would be in the

interest of the public health, convenience or welfare, he shall overrule said objection; and, in case all such objections are overruled or in case no such objections have been filed, the court thereupon shall, by its order duly entered of record, declare and decree said drainage district a public corporation of the State."

The quoted and other pertinent provisions of the statute do not delegate to the courts any "legislative power" that the Constitution required to be exercised solely by the legislature. The authority conferred upon the courts by the statute is a function to find and declare the existence of facts upon which a completed law may be put into operation in a case brought within the limitations fixed by the statute; and such function is not among "the powers of the government of the State of Florida," which Article II of the Constitution requires shall be exercised exclusively by one of the three departments of the government. The function to find and declare that the facts exist upon which the statute by its own terms operates, may by the statute be conferred upon an appropriate administrative tribunal; or it may be conferred by statute upon a court under the provision of Section 11, Article V, Constitution, which gives to the circuit courts jurisdiction of stated judicial matters "and of such other matters as the legislature may provide." See Martinez v. Ward, 19 Fla. 175; State v. Duval County, 76 Fla. 180, 79 So. R. 692; State v. Atlantic Coast Line, 56 Fla. 617, 47 So. R. 969, 42 L. R. A. (N. S.) 639; Duval Cattle Co. v. Hemphill, U. S. Circuit Court Appeals. Corporations not for profit are passed upon by the circuit judge before the law gives them corporate existence. Section 6495 *et seq.*, Comp. Gen. Laws. See also Sections 5076, *et seq.*, and Section 5083, Comp. Gen. Laws. See also Town of Ormond v. Shaw, 50 Fla. 445, 39 So. R. 108. The court in fact acted in performing a statutory function in finding

and declaring the existence of facts upon which the statute became operative by its own force, and whether the person who performed the fact finding function is a judicial officer or an executive or legislative officer is not controlling.

Executive or administrative officers or tribunals may by statute be authorized to exercise functions that are *quasi* judicial or *quasi* legislative in their nature, when the function is not a *power* that by the Constitution is assigned exclusively to one of the three departments of the government. The statutory duties of the railroad commission, the county commissioners and other administrative bodies are illustrations of the exercise of *quasi* legislative or *quasi* judicial functions. State v. A. C. L., 56 Fla. 617, 47 So. R. 969, 42 L. R. A. (N. S.) 639.

"The legislature, by (Chapter 6458, Laws of Florida) authorizing the establishment of drainage districts and assessments against property specially benefitted upon compliance with the terms and conditions which it prescribed, did not delegate its legislative power. Hagar v. Reclamation Drainage District, 111 U. S. 701. A compliance with these conditions precedent but gives effect to the legislative will.

"Whether in any given instance there has been such compliance is always a question of fact. To require the submission of a question of this nature to a court for its determination is not to confer upon it either legislative or executive power. This drainage act confers upon the courts the power, not to create a drainage district, but merely to decide and declare whether one has been created in accordance with its provisions. Fallbrook Irrigation Dist. v. Bradley, 164 U. S. 112, 178." Duval Cattle Co. v. Hemphill, U. S. Circuit Court of Appeals, decided 1930.

The provisions of Chapter 6458, Acts 1913, requiring a circuit court to hear objections to the incorporation of a drainage district or to the inclusion of particular lands therein, and to determine whether "the establishment of said drainage district and the improvements to be made thereunder will be for the advantage of the owners of the real property, therein or that the same would be in the interest of the public health, convenience or welfare," do not violate Article II of the Constitution.

The statute authorizes drainage districts to be formed "of any contiguous body of wet or overflowed lands, or lands subject to overflow, * * * for the purpose of having such lands reclaimed and protected from the effects of water for sanitary or agricultural purposes, or when the same may be conducive to the public health, convenience or welfare, or of public utility or benefit, by drainage or otherwise." Whether the statute may be applied to a particular locality is by the statute itself made to depend upon the existence of facts within the provisions and limitations of the statute, the existence of the facts to be found and declared by the tribunal designated by the statute, upon which finding of facts, the statute itself operates to form the district. See Martinez v. Ward, 19 Fla. 175.

The function of finding and declaring the facts contemplated by, the statute, to exist in a particular case is at least a *quasi* judicial function, the performance of which the legislature may confer upon the circuit courts, particularly in view of the provision of Section 11, Art. V. Constitution, that the circuit courts shall have jurisdiction "of such other *matters* as the *legislature* may provide." See Town of Ormond, 50 Fla. 445, 39 So. 108.

The courts take judicial notice of legislative enactments and this can be done in considering a demurrer to a bill of complaint which does not refer to the legislative enact-

ments. Statutes purporting to validate administrative acts in a bill of complaint to be invalid, may be considered by the court in passing upon a demurrer to the bill of complaint alleging such acts to be invalid; and if the validating statutes render valid the administrative acts alleged to be invalid, the demurrer to the bill of complaint should be sustained if the bill is not otherwise good as against the demurrer.

The decision in Pinellas Park Drainage District v. Kessler, 69 Fla. 558, 68 So. R. 668, with reference to the validity of Chapter 6458, Acts 1913, was more comprehensive than was the decision in Moore v. Hillsborough Co., 86 Fla. 514, 98 So. R. 505, with reference to the validity of Chapter 9316, Acts 1923. See Smith Bros. v. Williams, Jan. Term 1930. See also Columbia Co. v. King, 13 Fla. 465; Havemeyer v. Iowa County, 2 Wall. 203. Gelepke v. Du Buque, 1 Wall. 175, 1 Law Ed. 520; Fidelity Bank v. Swope, 274 U. S. 123, 71 L. Ed. 959.

By Chapter 7973, Acts 1919, quoted in the statement, ''all of the proceedings taken for the cessation, establishment and organization of North St. Lucie River Drainage District in St. Lucie County, Florida, * * * and any and all tax levies and assessments which have been made by the Board of Supervisors of said North St. Lucie River Drainage District for and on behalf of said District upon the taxable property located within said District, be and they are each and every one of them and each and every part thereof, hereby ratified, approved, validated and confirmed.''

These statutory provisions render valid all the proceedings and all administrative and *quasi* judicial actions taken under Chapter 6458, Acts 1913, it not appearing that any of such proceedings or actions taken conflict with organic law, see Pinellas Park Drainage District v. Kessler, 69 Fla.

558, 68 So. R. 668, or that the validating acts are not within the legislative power. It is not necessary to consider questions of laches or estoppel or the propriety of the remedy invoked or the particular relief prayed ·for. See Duval Cattle Co. v. Hemphill, *supra.*

The order overruling the demurrer to the bill of complaint and the order appointing an examiner to take testimony on the issues made by the bill of complaint and the answer of the Supervisors, are reversed.

TERRELL, C. J., AND STRUM, J., concur.

BUFORD, J., concurs in the conclusion.

ELLIS, J., dissents.

STRUM, J., concurring: I fully concur in the opinion prepared by Mr. Justice WHITFIELD.

The bill of complaint contains general allegations to the effect that certain of complainants' lands are high and dry, need no drainage and derive no benefit, either direct or indirect, from the operations of the District; and that such lands were included in the District solely for the purpose of deriving revenue therefrom by the levy of special assessments thereon. No facts are pleaded, however, which show the character of complainants' lands as high lands, or upon which the conclusion could rest that such lands were not benefited, either directly or indirectly, from the drainage operations. The general allegations relating to these matters are mere conclusions.

Even if those allegations, if sustained, would entitle the complainants to have the high lands excluded from the District upon authority of Myles Salt Co. v. Iberia Drainage District, 239 U. S. 478, 60 L. Ed. 392, the primary prayer of the bill is that the former decree establishing the District

"be vacated and declared null and void and of no effect" and that the tax assessments levied by said District be declared to be invalid and to constitute a cloud upon complainants' title and that the entire tax record of the District, including the assessments therein contained, be declared to be invalid. Thus the bill amounts to a collateral attack upon the existence of the District, which is not permissible. See West v. Town of Lake Placid, 120 So. R. 361; State v. City of Sarasota, 92 Fla. 963, 109 So. R. 473.

Although the bill also contains an auxiliary prayer to enjoin the collection of the unpaid assessments against complainants' lands, the bill is framed upon the theory that the organization of the District is invalid *in toto et ab initio*. The bill can not fairly be construed as one to exclude complainants' high and dry lands from the District by enjoining the collection of assessments against those particular lands as was done in the Myles Salt Co. case, *supra*.

WHITFIELD, J., concurs.