ROBERT R. WILLIAMS, JOHN W. DuBOSE, RALPH B. FERGUSON, R. C. GARDNER, and ANNA M. PERRY, severally as a Commissioner of the City of Miami, and as the City Commission of the city of Miami, v. KENNETH S. KEYES, ALEX.M. BALFE, C. D. VAN ORSDEL, FRANK J. KELLY, A. D. F. BLOODWORTH, and RALPH C. GRAHAM.

186 So. 250.
Opinion Filed December 14, 1938.
Rehearing Denied January 11, 1939.
Order on Motion to Vacate Stay Order Filed January 28, 1939.

770

*J. W. Watson, Jr., E. F. P. Brigham, Vincent C. Giblin* and *Marion E. Sibley,* for Appellants;

*M. Lewis Hall,* and *Alfred E. Sapp,* for Appellee;

*D. H. Redfearn, R. H. Hunt, Herbert S. Sawyer, George E. McCaskill* and *Abe Aronovitz* as *Amici Curiae.*

## STATEMENT

On October 7, 1938, three persons who are alleged to be citizens, taxpayers and electors of the City of Miami, Florida, filed with the senior Judge of the Circuit Court for Lade County, Florida, in which county the City of Miami is situated, a "bill of complaint and petition for relief" against the five Commissioners of the City of Miami and' the Acting Clerk and the *de jure* Clerk of the City of Miami, Florida. Filed in the Clerk's office, October 10, 1938.

The bill of complaint and petition contains extended allegations respecting acts and conduct of the defendant city officials in relation to an election to recall three of the City Commissioners under the provisions of the City Charter.

The prayer of the bill and petition is as follows:

"WHEREFORE, your Plaintiffs and Petitioners pray:

"1. That this Honorable Court take jurisdiction of this cause and give and grant unto them such appropriate and adequate relief as may seem meet and proper.

"2. That a Mandatory Injunction be forthwith issued and directed to the Defendant, A. D. F. Bloodworth, directing and requiring him to produce before this Court the

Registration Books of the City of Miami, Florida, together with the Amended Petition for the Recall of the three Defendants, Robert R. Williams, John W. DuBose, and Ralph B. Ferguson, as Commissioners of the City of Miami, Florida, and such other papers and records as may now be in his office or in his possession and control affecting in anywise or manner the sufficiency or insufficiency of said Amended Petition.

"3. That a Mandatory Injunction be forthwith issued and directed to the Defendant, Frank J. Kelly, directing and requiring him to produce before this Court any and all books, papers and records over which he has control affecting in anywise or manner the sufficiency or insufficiency of the Amended Petition for the Recall of the three Defendants, Robert R. Williams, John W. DuBose and Ralph B. Ferguson, as Commissioners of the City of Miami, Florida.

"4. That, thereupon, this Court determine and ascertain from said Registration Books, Amended Petition for Recall of the three said Commissioners and such other papers and records as may be brought into the Court, whether or not the intended action of Frank J. Kelly, as Clerk of the City of Miami, Florida, to certify to the sufficiency of the said Amended Petition for the Recall of the three defendants, Robert R. Williams, John W. DuBose and Ralph B. Ferguson, as Commissioners of the City of Miami, Florida, should be in Law and Equity treated as having been done, and likewise to determine whether or not the failure of the said A. D. F. Bloodworth, as Acting Clerk of the City of Miami, Florida, to certify to the sufficiency of said Amended Petition is an arbitrary and prejudicial act and a part and parcel of conspiracy between him, the said Bloodworth, and the three said Defendant-Commissioners whose recall is sought, and, if in law the said Amended Petition is sufficient, that the Court apply thereto the maxim

that Equity regards and treats that as done which in good conscience ought to be done.

"5.   That in the event the Court so finds that said equitable principle should be so applied that forthwith the Defendants, Robert R. Williams, John W. DuBose, Ralph B. Ferguson, R. C. Gardner and J. N. Lummus, as City Commissioners of said City of Miami, Florida, and as the City Commission of said City, be ordered and directed to order the holding of a Recall Election for the said three Defendants so sought to be recalled as required under the Laws of Florida and the Charter of the City of Miami, Florida.

"ALTERNATIVE PRAYER

"In the alternative, the Plaintiffs and Petitioners pray that this Court exercise its statutory jurisdiction as conferred in that portion of Section 12 of the Charter of the City of Miami, Florida, to-wit:

" 'Should the Commission fail or refuse to order an election as herein provided within the time required, such election may be ordered by any State Court of general jurisdiction."

"And that the Court do forthwith issue to the Defendants, Robert R. Williams, John W. DuBose, Ralph B. Ferguson, R. C. Gardner and J. N. Lummus, as the City Commission of the City of Miami, Florida, a rule to show cause, returnable to a certain day, as to why this Court should not order an election as above provided because of their failure or refusal to proceed in accordance with Law; that, thereafter, this Court proceed to order an election in accordance with its statutory powers."

An order to show cause was issued by the Judge as follows:

"It having been made to appear by sworn Bill of Complaint and Petition that the Defendants, Robert R. Wil-

liams, John W. DuBose and Ralph B. Ferguson, severally as Commissioners of the City of Miami, Florida, and constituting a majority of said City Commission, and the Defendant, A. D. F. Bloodworth, Acting Clerk of the City of Miami, Florida; have entered into a fraudulent and unlawful conspiracy to deprive the Plaintiffs and Petitioners of their respective rights under the Charter of the City of Miami, Florida, the Laws and Constitution of the State of Florida, viz., to vote upon the recall of the three said Commissioners, and it having been made to further appear from said sworn Bill of Complaint and Petition that Robert R. Williams, John W. DuBose, Ralph B. Ferguson, R. C. Gardner and J. N. Lummus, as the City Commission of the City of Miami, Florida, have failed and/or refused to order a recall election, all as set forth in the said Bill of Complaint and Petition filed in this cause, and the Court having duly considered the same, it is, thereupon,

"ORDERED AND ADJUDGED that the Defendants, Robert R. Williams, John W. DuBose, Ralph B. Ferguson, R. C. Gardner and J. N. Lummus, severally as a Commissioner of the City of Miami, Florida, and as the City Commission of the City of Miami, Florida, do show cause, if any they have, before the undersigned, one of the Judges of the Circuit Court, in and for Dade County, Florida, at his Chambers in the Courthouse in the City of Miami, Florida, at 9:00 o'clock A. M. on Wednesday, October 12, A. D. 1938, or as soon thereafter as Counsel can be heard, why this Court should not order an election for the recall of the three Defendants, Robert R. Williams, John W. DuBose and Ralph B. Ferguson, as City Commissioners of the City of Miami, Florida.

"IT IS FURTHER ORDERED AND ADJUDGED that the Defendants, A. D. F. Bloodworth, as Acting Clerk of the City

of Miami, Florida, and Frank J. Kelly, Clerk *in jure* of the City of Miami, Florida, do appear and produce before me at the time and on the date aforesaid, the Amended Petition for the recall of the three said Defendants, Robert R. Williams, John W. DuBose and Ralph B. Ferguson, as Commissioners of the City of Miami, Florida, and such other papers and records as they, and each of them, may have in their possession and control affecting in anywise or manner the sufficiency or insufficiency of said Amended Petition.

"FAIL NOT UNDER PENALTY OF THE LAW.

"DONE AND ORDERED in Chambers at Courthouse, Miami, Dade County, Florida, on this the 10th day of October, A. D. 1938.

"H. F. ATKINSON,

"Circuit Judge."

A motion to strike specified portions of the bill of complaint was granted in part, and a motion to dismiss the bill of complaint was denied in so far as it applies to the bill of complaint as deleted by the order of the Court on the motion to strike.

Defendant Frank J. Kelly filed an individual answer. The other defendants filed a joint and several answer to the bill of complaint and petition.

The statute involved, section 12 of Chapter 10847, Acts of 1925, is as follows:

"Sec. 12. *Procedure for Filing Recall Petition.*—Any member of the Commission may be recalled and removed therefrom by the electors of the City as herein provided. .

"Any qualified elector of the City may make and file with the City Clerk an affidavit containing the name or names of the Commissioner or Commissioners whose removal is sought and a statement of the grounds for removal. The

Clerk shall thereupon deliver to the elector making such affidavit copies of petition blanks for such removal, printed forms of which he shall keep on hand. Such blanks shall be issued by the Clerk with his signature and official seal thereto attached; they shall be dated and addressed to the Commission, shall contain the name of the person to whom issued, the number of blanks so issued, the name of the person or persons whose removal is sought, and the office from which such removal is sought. A copy of the petition shall be entered in a record book to be kept in the office of the Clerk. The recall petition, to be effective, must be returned and filed with the Clerk within thirty (30) days after the filing of the affidavit. The petition before being returned and filed shall be signed by registered voters of the City to the number of at least fifteen per cent (15%) of the total number of registered voters of the City as shown by the City registration books, and to every such signature shall be added the place of residence of the signer, giving the street and number or other description sufficient to identify the place. Such signatures need not all be on one paper, but the circulator of every such paper shall make an affidavit that each signature appended to the paper is the genuine signature of the person whose name it purports to be. All such recall papers shall be filed as one instrument with the endorsements thereon of the names and addresses of three persons designated as filing the same.

"*Examination and Amendment of Recall Petitions.*— Within ten (10) days after the filing of the petition the Clerk shall ascertain whether or not the petition is signed by the requisite number of registered voters and shall attach thereto his certificate showing the result of such examination. If his certificate shows the petition to be insufficient, he shall forthwith so notify in writing one (1) or more of the persons designated on the petition as filing the

same; and the petition may be amended at any time within ten (10) days, after the giving of said notice, by the filing of a supplementary petition upon additional petition papers, issued, signed and filed as provided herein for the original petition. The Clerk shall, within ten days after such amendment, make like examination of the amended petition, and attach thereto his certificate of the result. If then found to be insufficient, or if no amendment was made, he shall file the petition in his office and shall notify each of the persons designated thereon as filing it, of that fact. The final finding of the insufficiency of a petition shall not prejudice the filing of a new petition for the same purpose.

"*Calling of Recall Election.*—If the petition or amended petition shall be certified by the Clerk to be sufficient, he shall submit the same with his certificate to the Commission at its next meeting and shall notify the Commissioner or Commissioners whose removal is sought of such action. The Commission shall thereupon within ten (10) days of the receipt of the Clerk's certificate, order an election to be held not less than thirty (30) nor more than forty-five days thereafter. Provided, that if any municipal election is to occur within sixty (60) days after the receipt of said certificate, the Commission may in its discretion provide for the holding of the removal election on the date of such other municipal election.

"*Form of Ballot to Recall Commissioner:*—Unless the Commissioner or Commissioners whose removal is sought shall have resigned within ten (10) days after the receipt by the Commission of the Clerk's certificate, the form of the ballot at such election shall be as nearly as may be: 'Shall A be recalled?' 'Shall B be recalled?' etc., the name of the Commissioner or Commissioners whose recall is sought being inserted in place of A, B, etc., and the ballot

shall also contain the names of the candidates to be elected in place of the Commissioner or Commissioners recalled, as follows: 'Candidates for the place of A, if recalled; Candidates for the place of B, if recalled; etc., but the Commissioner or Commissioners whose recall is sought shall not themselves be candidates upon such ballot. The name of any elector of the City shall be printed as a candidate for the Commissioner at such recall election for the place of the Commissioner to be recalled when a petition in substantially the form provided in Section 7, of this charter, shall be filed in his behalf with the City Clerk, and such petition shall have been signed by at least three per cent (3%) of the total number of registered voters in the municipality and filed with the City Clerk not less than fifteen (15) days before such recall election.

"In case a majority of those voting for and against the recall of any Commissioner shall vote in favor of recalling such official, he shall be thereby removed, and in the event the candidate who receives the highest number of votes for his place shall be elected thereto for the balance of the unexpired term.

"If the Commissioner or Commissioners sought to be removed shall have resigned within ten (10) days after the receipt by the Commission of the Clerk's certificate referred to in this Section above, the form of ballot at the election shall be the same, as nearly as may be, as the form in use at a regular municipal election.

"*Procedure on Refusal of Commission.*—Should the Commission fail or refuse to order an election as herein provided within the time required, such election may be ordered by any State Court of general jurisdiction."

Testimony was taken before the Circuit Judge, who rendered the following decree:

"FINAL DECREE ORDERING RECALL ELECTION

"This cause having come on for final hearing on the issues made by the pleadings, and the Court, having heard the testimony and evidence produced by the respective parties and their witnesses, and also having heard the argument of counsel for the respective parties, and being otherwise fully advised in the premises, is of the opinion and finds that:

### 1.

"This is a suit brought by three citizens, taxpayers and electors of the City of Miami, a municipal corporation in Dade County, Florida, against the City Commissioners of said City, severally as a Commissioner, and also as the City Commission of said City. Both the Acting and the *in jure* City Clerks are likewise made Defendants.

### 2.

"That Frank J. Kelly, as City Clerk of the City of Miami, Florida, did on May 10, 1938, make a Certificate that a petition, as amended and supplemented, seeking a Recall Election applying to Miami City Commissioners, to-wit: Robert R. Williams, John W. DuBose and Ralph B. Ferguson, was sufficient. The said Clerk was prevented from presenting his Certificate already prepared and signed by him and in evidence in this cause, by reason of a Constitutional Writ of the Supreme Court in a case brought by the Defendant, Robert R. Williams, against the said Clerk, Frank J. Kelly; that said Constitutional Writ was afterwards vacated and the said Kelly immediately began his efforts to purge the Registration Books. On the same day, the City Commission of the City of Miami, Florida, by a majority vote of the Commissioners sought to be recalled, proceeded to summarily remove the said Kelly from office and the said Commission majority did proceed to appoint

one A. D. F. Bloodworth, as Clerk, who made some effort to purge the Registration Books, but it appears from testimony of the said Bloodworth offered in this cause that his efforts were solely confined to a restoration of names to the card index system in use in the Clerk's office and to thereby increase the number of registered voters, making no effort to check the names of approximately thirty-six thousand (36,000) voters who had been found by Kelly to be qualified registered voters; in other words, Bloodworth accepted Kelly's findings only insofar as it would be helpful to the three (3) Commissioners who were responsible for his employment, further testifying that although he was in office as Clerk for about three (3) months he had not completed his purge.

"Upon *Quo Warranto* proceedings, Bloodworth was removed by the Supreme Court and Kelly reinstated; on the day following, the City Commission did suspend Kelly and ordered him again removed from office and he was forcibly ejected by the Chief of Police of the City of Miami.

"The Court finds that Frank J. Kelly, as Clerk, in the exercise of his quasi judicial duties, as provided by the Charter of the City of Miami, did ascertain and determine that the Petition, as amended and supplemented, for the Recall of the three (3) said Commissioners, did contain fifteen per cent (15%) of the registered voters of the City of Miami, according to the Registration Books and that he would have delivered said Certificate so made to the City Commission had he not been prevented from so doing by matters over which he had no control. Issue being raised by the Bill of Complaint and Answer that the said Certificate was insufficient, the Court proceeded to consider the Registration Books of the City of Miami and other testimony and proofs offered in evidence, and finds that the City Commission of Miami, Florida, did on November 16,

1925, pass Ordinance No. 536, and in Section 16 thereof, did order the Clerk, as Supervisor of Registration, to at once cause the name of each elector who had previously registered in July and August of said year to be entered in the Registration Book for the precinct in which the elector resided.

"The Court further finds that the then Clerk, one H. E. Ross, proceeded to follow the requirements of that portion of said Ordinance No. 536, although he testified that he did not intend to do such because of the Ordinance—merely proceeding in that manner for his own convenience. Instead of labelling the books as 'Registration Book,' as provided in said Ordinance, he termed them 'Poll Books'; nevertheless, they complied with the provisions of said Ordinance above referred to. At or about the same time, the said Ross, as Clerk, proceeded to create for his own convenience a card index system which was made from the duplicate registration certificates issued to each voter at the time he subscribed his name in the Registration Books. That the Registration Books in which the voters subscribed their names were never purged by the removal of voters who had become disqualified by death, removal or otherwise, and as testified to by the said Ross in many instances contained the name of a registered voter who had registered as many as eight or ten times. Further that the Registration Books upon which the electors signed their names are in such a dilapidated and worn condition, together with the fact that thousands of voters removed from the City of Miami after the 'Boom Period' of 1925 and 1926 that it would be a well nigh impossible task for the said books to be, within any reasonable time, made to correctly reflect the registered voters of the City of Miami.

"The transcribed Registration Books or 'Poll Books' were purged by the Clerk from time to time as it came to his

knowledge that the name of an elector should be removed therefrom. The Court further finds that said transcribed 'Registration Books,' commonly called the 'Poll Books,' correctly and accurately reflect the registered voters of the City of Miami.

"The Court further finds that the Transcribed Registration Books, called the 'Poll Books,' reflect as accurate a list of the registered voters of Miami as could be ascertained if the books in which the voters signed their names were purged in accordance with Ordinance No. 536, and further finds that any purge of the last-mentioned books would at this late date have to be based to a great extent upon hearsay evidence.

"The Court further finds that said 'Poll Books' were the books used by the Inspectors and Clerks at all of the elections since 1925, and especially at the elections in which the Commissioners sought to be recalled were elected, and that the books in which the voters actually signed their names were only used for checking upon the infrequent occasions when a prospective voter's name did not appear upon said 'Poll Books.'

"The Court finds from the testimony of the Clerk Frank J. Kelly, that the 'Poll Books' were accurately and correctly kept and purged continuously since he went into office in 1935 which was prior to the election of two (2) of the said three (3) Commissioners, whose recall is sought.

"The Court further finds that the names of the Petitioners sought the Petition for the Recall of the three (3) said Commissioners were compared by the said Clerk with the original signatures of the registered voters and found to be genuine and accurate, and that the said Petition was sufficient and ought to have been delivered to the City Commission of the City of Miami.

"The Court further finds that the three (3) said City

Commissioners sought to be recalled did by their acts and conduct prevent the said City Clerk from delivering to them the Certificate as to the sufficiency of the said Petition for Recall of the three (3) said Commissioners.

"The Court further finds that the Charter of the City of Miami makes the General Election Law of the State of Florida a part of the Charter of the City of Miami, and that the duty is imposed upon the City Commissioners to examine and revise the Registration Books, the authority and duty therefor being contained within said Charter and being as follows, to-wit:

" 'Any person who shall possess the qualifications requisite to an elector at a general State Election and shall have resided in the City six (6) months next preceding the city election, at which he offers to vote, and shall have been registered in the City registration books that shall be prescribed by ordinance, shall be a qualified elector of the city and all elections held in said city shall be conducted and held in accordance with the provisions of the general election law of the State of Florida, except as otherwise provided in this charter, and except that the City Commissioners shall be substituted for the Board of County Commissioners.'

"The duty of the County Commissioners is set forth in Section 297, Compiled General Laws, 1927, being as follows, to-wit:

" 'COUNTY COMMISSIONERS TO EXAMINE AND REVISE REGISTRATION BOOKS. * * *—It shall be the duty of the county commissioners of each county, on the first Wednesday after the registration books are closed, as provided for in this Article in every year in which there is a general election, to examine and revise the registration books of said county, erasing therefrom the names of all such as have died, or removed from the county or from one district

to another in the same county, or who are otherwise disqualified to vote, and restoring such names as have been improperly taken off by the supervisor of registration; said examination and revision shall be completed within three days thereafter; and immediately the county commissioners shall cause to be published in a newspaper, if there be one published in such county, and also post at the court house door a list of the names, alphabetically arranged, that have been erased or stricken from the registration books of each district in such county, either by the supervisor of registration or said board of county commissioners; * * * '

"The duty of the City Clerk as Custodian of Registration Books is the same as that of the County Supervisor of Registration as set forth in Section 293, Compiled General Laws, 1927, such duty being conferred by Section 15 of Ordinance No. 536. Said Section makes it the duty of said Clerk, as Supervisor, to 'whenever it should come to the knowledge of the Supervisor of Registration that any elector has died or become disqualified to vote for any reason whatever or that his right to vote has become affected in any way since his registration, it shall be the duty of the Supervisor of Registration to make a note of such fact on the proper Registration Books opposite the name of such person and to mark off the names of such persons as have so ceased to be qualified electors by running a pen through the names of such person or such persons and said Supervisor of Registration shall carefully note on said book the date of such erasure and the cause thereof."

"*Section 16 of said Ordinance No. 536*, provides:

" 'That all persons who registered for the special election held on the 2nd day of September, 1925, to vote upon the question whether the corporate limits of the City of Miami shall be extended so as to include the territory described in Section 1 of Ordinance No. 420, shall be deemed

registered electors of the City of Miami, and the Supervisor of Registration shall at once cause the name of each such elector to be entered in the registration book for the precinct in which the elector now resides.'

"The Court further finds that the duty of the City Clerk of Miami in checking the Recall Petitions was quasi judicial and rested upon the City Clerk and not the City Commission; that the ruling of the Supreme Court in the case of WILLIAMS v. KELLY, 182 Sou. 881, was predicated upon allegations in the Bill of Complaint by the Plaintiff, who is one of the Defendants herein, who there contended and here contends' that the original Registration Books in which the voters signed their names must be purged and until that be done by the Clerk he was not entitled to make and deliver unto the City Commission a Certificate as to the sufficiency thereof; that the allegations of said Bill of Complaint failed to show or advise the Supreme Court that the books commonly referred to as 'Poll Books' were in law, according to the Ordinance of said City, a part of the Registration Books of the City of Miami, and further failed to show that it was the duty of the City Commission to examine and revise the Registration Books of said City, which had not in truth and in fact been done since their inception thirteen (13) years before.

"It is to be noted that the Supreme Court in the last-mentioned case stated that 'of course, the City Registration Books must be so kept as to show only the qualified registered voters of the City at the time such Registration Books are being used as the statutory means to show 'the total number of registered voters in the city.' In further proceedings it may be shown whether in this respect the Statute has been obeyed as it must be.'

"The Plaintiff, Robert R. Williams, Defendant herein, saw fit to dismiss the above suit when it returned to the

Lower Court, and, therefore, no opportunity was given the Defendants to answer and show by proofs the above facts.

"The Court further finds that, even though the Books in which the registered electors signed their names should have been purged, that it became and was the duty of the several City Commissions since the year 1925, including the present City Commission, Defendants herein, to have purged said Books, and that their failure so to do is reponsible for the condition in which they now exist and from which it is well nigh impossible to ascertain the registered voters of said City, and that the voters seeking a Recall Election should not be deprived of their constitutional rights because of the dereliction of duty and neglect of the Defendants.

"The Court further finds that it has jurisdiction to call an election because the acts and conduct of the three (3) said Commissioners sought to be recalled in their obstructive methods to prevent the Recall Election have been and are tantamount to a failure and refusal to call said election, and that this Court is empowered as a court of general jurisdiction to itself call said election as provided in the Charter of said City, to-wit:

" 'Should the Commission fail or refuse to order an election as herein provided within the time required, such election may be ordered by any State Court of general jurisdiction.'

"The Court further finds that this Section is constitutional and does not violate organic law because of the constitutional provision, Article V, Section 11, Compiled General Laws, 1927, to-wit:

" 'Circuit Courts shall be original jurisdiction * * * of such other matters as the Legislature may provide.'

And the action of the Court in ordering an election where there has been a failure or refusal so to do by an Admin-

istrative Body is judicial and all acts done by the Court to bring about the election itself is likewise judicial. See *State, ex rel. Browning, et al., v. Juden,* (*Mo*) 264 *S. W.* **101.**

"WHEREFORE, it is, upon consideration thereof, CONSIDERED, 'ORDERED, ADJUDGED and ·DECREED by the Court that:

"1.   This Court has jurisdiction of the subject-matter of this suit and of the parties to this cause.

"2.   The equities in this cause are with the Plaintiffs,

"3.   (a) That a municipal election for the City of Miami for the recall of each of the three (3) City Commissioners, to-wit: Robert R. Williams, John W. DuBose and Ralph B. Ferguson, and for the election of their respective successors, if recalled, is hereby called and directed to be held in the City of· Miami, Dade County, Florida, at the following voting places in the Precincts designated, to-wit:"

Then follow details as to publication of notice, appointing election officials for holding a recall election December 15, 1938.

The decree concludes as follows:

"(f)   Unless the Commissioners whose removal is sought, or either of them, shall have resigned in accordance with the provisions of Section 12 of the Charter of the City of Miami, Florida, the Official Ballot to be used· at said election shall be, as nearly as may be, the following form, to-wit: (form of ballots set out)

"And the City Clerk will prepare the ballot so that the names of the qualified candidates shall appear on said ballot in their respective alphabetical order according to surname.

"(g)·   If either of said Commissioners, to-wit: Robert R. Williams, John W. DuBose and Ralph B. Ferguson, shall resign hereafter, the name of such commissioner or

commissioners who shall have resigned shall be eliminated from said Ballot insofar as the voting upon the Recall of said Commissioner or Commissioners so resigned is provided upon said Ballot, and the word 'resign' shall be substituted for the words 'if recalled,' and otherwise the form of Ballot herein prescribed shall remain as herein provided.

"(h)   That the City Commission of Miami, Florida, by Ordinance, Resolution or otherwise provided for shall pay from monies on hand any and all costs necessary to carry this Order into effect, including but not limited to the costs of registration, advertising of said election and the election herein provided for; and all officers and employees of the City of Miami, including the Acting City Clerk thereof, are hereby ordered and directed to perform their respective duties, according to law and the Charter of said City of Miami, in order that the election herein called and provided for shall be held as herein ordered.

"It Is Further Ordered, Adjudged and Decreed that jurisdiction of this cause is retained for the purpose of making such other and further orders and decrees, if any, as shall be meet and proper.

"Done and Ordered, this 10th day of November, A. D. 1938, at Miami, Dade County, Florida.

> "H. F. Atkinson,
> "Circuit Judge."

There was an amendment to the details of the decree that is not material to be stated.

The following notice of entry of appeal was filed and recorded:

"Book 485 Page 116

"In the Circuit Court of the Eleventh Judicial Circuit of Florida in and for Dade Co.   In Chancery. No. 54633.

"KENNETH S. KEYES, *et al.*, Plaintiffs, vs. ROBERT R. WILLIAMS, *et al.*, Defendants.

"NOTICE OF ENTRY OF APPEAL.

"To: KENNETH S. KEYES, ALEX M. BALFE, C. D. VAN ORSDEL, FRANK J. KELLY, A. D. F. BLOODWORTH AND RALPH C. GRAHAM:

"You will please take notice that Robert R. Williams, John W. DuBose, Ralph B. Ferguson, R. C. Gardner and Anna M. Perry, severally as a Commissioner of the City of Miami, Florida, and as the City Commission of the City of Miami, Florida, do hereby take and enter their appeal from that certain final decree rendered in the above entitled cause on the 10th day of November 1938, by the Honorable H. F. Atkinson, same being filed and recorded in the office of the Clerk of Circuit Court in and for Dade County, Florida, on November 10, 1938, recorded in Chancery Order Book 485 at Page 1.

"The said Robert R. Williams, John W. DuBose, Ralph B. Ferguson, R. C. Gardner and Anna M. Perry, Severally as a Commissioner of the City of Miami, Florida are named as appellants in this appeal, and Kenneth S. Keyes, Alex M. Balfe, C. D. Van Orsdel, Frank J. Kelly, A. D. F. Bloodworth and Ralph C. Graham are hereby named and designated as appellees, and this appeal is taken to the Supreme Court of Florida, sitting at the State Capital at Tallahassee, Florida, and the said appeal is hereby made returnable before the Supreme Court of Florida on January 25, 1939. Each of the appellees herein designated is hereby notified of the taking and entering of this appeal, and of all matters and things herein set forth.

"Dated at Miami, Florida, this 15th day of November, 1938.

"Filed this 15th day of Nov. A. D. 1938, and recorded

this 15th day of Nov. A. D. 1938, in Chancery Order Book 485 on Page 116.

"E. B. LEATHERMAN,
"Clerk Circuit Court     "JOHN W. WATSON
"By F. L. Davis, D. C.     "E. F. P. BRIGHAM
                             "VINCENT C. GIBLIN
                             "MARION E. SIBLEY
                             "By J. W. WATSON, JR.
                             "Attorneys for Appellants."

Appellants' questions involved are:

## "FIRST QUESTION

"Do the provisions of a city charter adopted by special Act of the Legislature which grant to the Circuit Court jurisdiction to call and order a recall election offend Section One Article Two of the Constitution of the State of Florida, and Section Twenty Article Three of the Constitution of the State of Florida?

## "SECOND QUESTION

"Does a Court of Chancery have jurisdiction of a bill of complaint or petition which seeks from the Court an order calling an election, which order or decree sets up the machinery for holding an election and provides that the election shall be held at the direction, under the supervision and in accordance with the rules and regulations prescribed by the Court in its decree?

## "THIRD QUESTION

"Where a city charter provides that a recall election shall be ordered by the City Commission of such city when the Clerk of the city shall certify that a recall petition as amended contains fifteen per cent of the registered voters of

said city as shown by the registration books, and in the event the Commissioners fail to order such election, upon the receipt of the Clerk's certificate the Circuit Court may order said election, can the Circuit Court lawfully order such election upon a bill of complaint filed by electors and taxpayers of said city where all the evidence establishes that the Clerk has not ascertained whether said recall petition contains fifteen percent of the registered voters of said city as shown by the registration books, and has not ascertained whether said petition contains such percentage of the voters of said city as shown by the registration books, and the evidence clearly establishes that said petition does not contain fifteen percent of the registered voters of said city as shown by the city registration books?"

PER CURIAM.—The "bill of complaint and petition for relief" brought in the Circuit Court in this cause invoke the equity jurisdiction of the Circuit Court to order by decree the holding of a municipal recall election, upon the theory that the City Commissioners who are sought to be recalled have unlawfully obstructed stated statutory proceedings by the City Clerk that are preliminary to caling and holding a recall election, and that the Court of Equity should take jurisdiction of the bill of complaint and petition for relief brought by citizens who are taxpayers and electors of the city, and ascertain the facts and order the calling and holding of a recall election under the statute when the City Commission has failed to do so as contemplated by the charter statute.

The controlling questions presented are whether the petitions for a recall municipal election are signed by at least 15% of all the registered voters of the City of Miami as shown by the city registration books, and whether the Circuit Court is authorized to order a recall election to be held under the charter statute when the City Commissioners are

adjudged to have failed to call such election. Previous related decisions are in DuBose v. Kelly, 132 Fla. 548, 181 So. 11; Williams v. Kelly, 133 Fla. 224, 182 So. 881, and State, *ex rel.*, Attorney General, v. Bloodworth, 369 Fla. 134, 184 So. 1.

Quoted in the statement are the statutory charter provisions for calling and holding a recall election for recalling members of the City Commission, Section 12, Chapter 14847, Acts of 1925, among which statutory charter provisions are:

"Any qualified elector of the City may make and file with the City Clerk an affidavit containing the name or names of the Commissioner or Commissioners whose removal is sought and a statement of the grounds for removal. The Clerk shall thereupon deliver to the elector making such affidavit copies of petition blanks for such removal, printed forms of which he shall keep on hand. Such blanks shall be issued by the Clerk with his signature and official seal thereto attached; they shall be dated and addressed to the Commission, shall contain the name of the person to whom issued, the number of blanks so issued, the name of the person or persons whose removal is sought, and the office from which such removal is sought. A copy of the petition shall be entered in a record book to be kept in the office of the Clerk. The recall petition, to be effective, must be returned and filed with the Clerk within thirty (30) days after the filing of the affidavit. The petition before being returned and filed shall be signed by registered voters of the City to the number of at least fifteen per cent (15%) of the total number of registered voters of the City as shown by the City registration books, * * *

"Within ten (10) days after the filing of the petition the Clerk shall ascertain whether or not the petition is signed

by the requisite number of registered voters and shall attach thereto his certificate showing the result of such examination. * * *

"If the petition or amended petition shall be certified by the Clerk to be sufficient he shall submit the same with his certificate to the Commission at its next meeting and shall notify the Commissioner or Commissioners whose removal is sought of such action. The Commission shall thereupon within ten (10) days of the receipt of the Clerk's certificate, order an election to be held not less than thirty (30) nor more than forty-five days thereafter." * * *

"Should the Commission fail or refuse to order an election as herein provided within the time required, such election may be ordered by any State Court of general jurisdiction."

It is in effect contended that the provision of the statute which imposes upon the courts the administrative duty of ordering a recall election violates Article II of the Florida constitution which forbids any person properly belonging to the Judicial Department to exercise any *power* appertaining to either of the other two departments of the State government, except in cases expressly provided for in the constitution.

The constitution does not expressly provide that the State Courts shall have jurisdiction to order a recall or other election to be held; nor is the ordering of an election to be held an essentially judicial function; but the constitution does provide that:

"The circuit courts shall have exclusive original jurisdiction in all cases in equity, * * * and original jurisdiction * * * of such other matters as the Legislature may provide." Sec. II, Art. V.

Ordering an election to be held is ordinarily an administrative function or duty and is not one of "the powers of

government" that are by the constitution divided into three departments, viz.: Legislative, Executive and Judicial. Administrative authority or duty may by statute be appropriately made subject to the *powers* of either of the three departments when no provision of the constitution is thereby violated, for practically all the *powers* of government are executed or enforced through administrative or ministerial officers, agents or employees. See State v. A. C. L. Ry. Co., 56 Fla. 617, 47 So. 969, 32 L. R. A. (N. S.) 639. The Governor orders special elections to fill vacancies in office in stated cases. Sec. 256 (221) C. G. L.

The quoted provisions of the Miami City Charter Act do no more than to expressly authorize State courts of general jurisdiction to order a recall election to be held if the City Commissioners fail or refuse to order a recall election when it is their duty to do so.

In this case a court of equity having general jurisdiction under the constitution took jurisdiction of a bill of complaint and petition for relief, and, upon allegations in effect that a majority of the City Commissioners had not performed their statutory duties but had hindered the City Clerk in performing his duty upon the institution of proceedings for a recall election, the court in the exercise of its general and exclusive equity powers under the constitution, took evidence and ascertained that statutory official duties of the City Commissioners in the premises had not been performed; and proceeding upon the principle that equity considers the substance of things and the rights of all parties under the law, and, acting within its jurisdiction, ordered that to be done which should have been done by the City Commissioners in ordering a recall election to be held.

In the exercise of its constitutional powers to have equity done to and by litigants before the court in appropria'e

.proceedings, the court has ascertained and determined in effect that the alleged failure and conduct of the City Commissioners is proven, and the court ordered a recall election, in consonance with the statutory authority conferred on State courts of general jurisdiction; and in furtherance of the exercise of its constitutional equity powers to require that to be done which should be done, has also ordered named persons to hold the recall election *with incidental orders as to publication of notices of the election and other appropriate and needful matters. The court merely ordered to be done that which the court in effect found the Commissioners should have done under the statute but failed to do.

Article II of the Florida constitution is not shown to have been violated by the statute or its application in this case.

The quoted provisions of the statute do not regulate the jurisdiction and duties of any class of officers, or regulate the practice of courts of justice in violation of sections 20 and 21, Article III, of the constitution.

Courts of equity do not have general jurisdiction to order elections to be held in the absence of valid statutory authority; but courts of equity do have power in proper cases to require that to be done which in law should be done; and any appropriate statutory or other means not violative of organic law may be utilized in requiring statutory duties to be performed by persons designated by the court itself or by statutes, as may be most appropriate to the complete exercise of the equity power when the constitution or a controlling statute is not violated; and no such violation is shown in this case. This holding does not conflict with the decision in Joughin v. Parks, 107 Fla. 833, 147 So. 273. See State v. Duval County, 76 Fla. 180, 79 So. 692; Fla. Motor Lines, Inc., v. R. R. Com'rs. 100 Fla. 538, 129 So.

876; McMullen v. Newmar Corp., 100 Fla. 566, 129 So. 870; Towns v. State, 102 Fla. 188, 135 So. 822; Duval County v. Jennings, 121 Fla. 584; 164 So. 356."

In DuBose v. Kelly, 132 Fla. 548, 181 So. 11, and in Williams v. Kelly, City Clerk, 133 Fla. 224, 182 So. 881, where previous phases of this general controversy are referred to, it was in effect alleged that the City Clerk had not properly ascertained that at least 15% of "the total number of registered voters of the city as shown by the city registration books," had signed the recall petitions as required by the charter statute, before the Clerk could file a certificate to that effect, and this court, with only the bill of complaint before it, stated that "in further proceedings it may be shown whether, in this respect, the statute has been obeyed as it must be." The City Clerk was enjoined from issuing the requested certificate because it was then in effect alleged and not denied that the recall petitions were not signed by at least 15% of the registered voters of the city as shown by the city registration books, as required by the charter statute. The law does not designate the books that constitute the city registration books, but the statute does provide that:

"Any person who shall possess the qualifications requisite to an elector at a general State Election and shall have resided in the City six (6) months next preceding the city election, at which he offers to vote, and shall have been registered in the City registration books that shall be prescribed by ordinance, shall be a qualified elector of the city and all elections held in said city shall be conducted and held in accordance with the provisions of the general election law of the State of Florida, except as otherwise provided in this charter, and except that the City Commissioners shall be substituted for the Board of County Commissioners,"

And Section 16 of Ordinance No. 536 of the City of Miami provides:

"That all persons who registered for the special election held on the 2nd day of September, 1925, to vote upon the question whether the corporate limits of the City of Miami shall be extended so as to include the territory described in Section 1 of Ordinance No. 420, shall be deemed registered electors of the City of Miami, and the Supervisor of Registration shall at once cause the name of each such elector to be entered in the registration book for the precinct in which the elector now resides."

It is now for the first time shown to this court what in fact constitute "the city registration books." The trial Judge in this case found from the evidence adduced before him that:

The City Clerk "in the exercise of his *quasi* judicial duties, as provided by the Charter of the City of Miami, did ascertain and determine that the Petition, as amended and supplemented, for the Recall of the three (3) said Commissioners, did contain fifteen per cent (15%) of the registered voters of the City of Miami, according to the Registration Books."

The Court further decreed: "Issue being raised by the bill of complaint and answer that the said certificate was insufficient the court proceeded to consider the registration books of the City of Miami and other testimony and proofs offered in evidence, and finds in effect that, by virtue of specified ordinances of the city, stated "registration books for the" precincts of the city, called "Poll Books," together with the original badly worn books of registration, are in fact the "city registration books" under the statute; and that as such, the so-called "Poll Books" into which the names of the original registrations were transcribed by authority of ordinance No. 536, and subsequent registra-

tions of voters added thereto, have been kept substantially as contemplated by the city charter and ordinances and statutes made a part of the city charter. See decree with findings of the court in the statement filed herewith.

The City Clerk, Mr. Kelly, as a witness identified registration books of 1925 and subsequent books called precinct "poll lists" or "poll books" as being "a part of the registration system of the City of Miami, Florida." The books were admitted in evidence over the objection of counsel for the defendant City Commission.

He testified:

"As registration certificates are issued from the City Clerk's office as ex-officio Supervisor of Registration, or in the precincts under deputy supervisors, the duplicate of that registration certificate is kept in a bad form, and returned to the Clerk's office if it is in the precinct, or retained there if the registrations are in the City Clerk's office. From those duplicate certificates cards are made containing identically the same information as is on that registration certificate. Those cards are then assembled in alphabetical order according to precincts, and then transcribed into these poll lists, which are sent to the precincts on election day for the conduction of elections. * * *

"Q. (By Mr. Hall) Mr. Kelly, are these transcribed registration books which you have termed poll lists in substance the same and identically prepared as the other poll books within the City of Miami, and do the others conform to the original registration of names the same as you have testified that these do?

"Mr. Giblin: I object to the question as incorporating therein a characterization of the poll lists as registration books.

"The Court: The objection is overruled.

"The Witness: Yes. * * *

"Q. Do those poll lists accurately reflect the registered voters within the City of Miami today?

"A. Yes.

"Mr. Brigham: I object to that question, if your Honor please; it is not shown that the witness is qualified to answer; it is a conclusion of this witness; it is not shown that the books inquired about were made under his supervision, direction or control.

"The Court: Overruled.

"The Witness: My answer was yes."

The decree contains the following:

"The Court finds that Frank J. Kelly, as Clerk, in the exercise of his quasi judicial duties, as provided by the Charter of the City of Miami, did ascertain and determine that the Petition, as amended and supplemented, for the Recall of the three (3) said Commissioners, did contain fifteen per cent (15%) of the registered voters of the City of Miami, according to the Registration Books and that he would have delivered said Certificate so made to the City Commission had he not been prevented from so doing by matters over which he had no control."

The decree also finds that:

"The transcribed Registration Books or 'Poll Books,' were purged by the Clerk from time to time as it came to his knowledge that the name of an elector should be removed therefrom. The Court further finds that said transcribed 'Registration Books,' commonly called the 'Poll Books,' correctly and accurately reflect the registered voters of the City of Miami.

"The Court further finds that the Transcribed Registration Books, called the "Poll Books." reflect as accurate a list of the registered voters of Miami as could be ascertained if the books in which the voters signed their names were purged * * *."

There is ample evidence in the record to support the essential findings and decree of the trial court including the finding in effect that the conduct of the three City Commissioners is "tantamount to a failure and refusal to call" the recall election.

So it appears from the findings and decree and the record in this case, (which did not appear in the record of the prior cases above referred to) that the certificate of the City Clerk as made stating in effect that the recall petitions had been signed by at least fifteen per cent (15%) of the total number of the registered voters of the City of Miami as shown by the city registration books, has by the Circuit Court been in effect adjudged to be a correct and legal certificate to be made under the charter statute. And as the findings and decree of the trial court, supported by evidence in this case, are determinative of the main issues of fact in controversy, it is not necessary to discuss in detail particular contentions that are controlled by the adjudication of the main issue of fact that is here affirmed.

The decree appealed from is affirmed and the cause is remanded for appropriate proceedings including the ordering of a recall election to be held in due course of law.

TERRELL, C. J., and WHITFIELD, and CHAPMAN, J. J., concur.

BROWN and THOMAS, J. J., concur in part and dissent in part.

BROWN, J. (concurring in part and dissenting in part) I concur in all of the foregoing opinion and judgment except that part of it which holds that the Circuit Court can legally set up the machinery and appoint the inspectors and otherwise provide for the conduct of the election. The Circuit Judge, under the circumstances alleged and proven in this case, had the power to order the recall election to be held,

and the Circuit Court also has the power to compel performance of that order, but the election should be held and conducted in the manner provided for by the City Charter. Any failure to do so can be compelled by mandamus, or perhaps by mandatory injunction orders ancillary to the pending suit. But the Court cannot, in my opinion itself hold or conduct the election. See Joughin v. Parks, 107 Fla. 833, 143 So. 145, 306, 147 So. 273.

The constitutionality of the provision in the City charter Act giving "any State Court of general jurisdiction" power to order the election, is, I think upheld by the principles enunciated in the following cases: State, *ex rel*. Williams v. Coleman, 131 Fla. 892, 180 So. 357; State v. Duval County, 76 Fla. 180, 79 So. 692; Fla. Motor Lines v. R. R. Comm. 100 Fla. 538, 129 So. 816; McMullen v. Newman Corp'n, 100 Fla. 566, 129 So. 870; Towns v. State, 102 Fla. 188, 135 So. 822; Duval County v. Jennings, 121 Fla. 584, 164 So. 356. See also in this general connection 11 Am. Juris. 880-882: State v. Clark, 22 Pac. 2nd, 900; Rawl v. McCown, 81 S. E. 958; Gibson v. Board of Supervisors, 79 S. E. 976.

THOMAS, J., concurs.

BUFORD, J. (dissenting).—I am unable to agree with the majority opinion in this case for two reasons. I think that the provision of the City Charter as quoted in the majority opinion, to-wit: "Should the Commission fail or refuse to order an election as herein provided within the time required, such election may be ordered by any State Court of general jurisdiction," if construed as intending to vest power in the Circuit Court under the conditions mentioned, to order, direct and supervise the contemplated recall election as and in lieu of the City Commission, violates Article II of the Constitution, which provides as follows:

"The powers of the government of the State of Florida shall be divided into three departments; Legislative, Executive and Judicial; and no person properly belonging to one of the departments shall exercise any powers appertaining to either of the others, except in cases expressly provided for by this Constitution."

I am unable to agree that the holding in the majortiy opinion does not conflict with decisions in Joughin v. Parks, 107 Fla. 833, 147 So. 273; State v. Duval County, 76 Fla. 180, 79 Sou. 692; Fla. Motor Lines, Inc., v. R. R. Com's, 100 Fla. 538, 129 Sou. 876; McMullen v. Newmar Corp., 100 Fla. 566, 129 Sou. 870; Towns v. State, 102 Fla. 188, 135 Sou. 822; Duval County v. Jennings, 121 Fla. 584, 164 Sou. 356.

In the Joughin case we held:

"An injunction will not issue for the purpose of restraining the holding of an election, or of directing or controlling the mode in which, or of determining the rules of law in pursuance of which, an election shall be held, because the holding and conduct of an election during its progress is a political matter with which courts of equity have nothing to do. Pomeroy's Equity Jur. (4th Ed.), Sections 1753-1754 and cases cited. See Markett v. Sumter County, 60 Fla. 328, and cases cited.

"The rule in this State was only modified in the recent case of McGregor v. Burnett, 141 So. 599, to the extent of holding that where 'prior to an election' palpable violation of the registration or election laws is about to take place, and is properly charged in a bill in equity by an elector he may have 'injunction or such other appropriate remedy as is available to him under the law' to prevent fraud and palpable violations of the election laws which are charged as about to be committed prior to the election such as was the situation in that case dealt with.

"The Constitution provides (Section 9, Article VI) that the Legislature shall enact such laws as will preserve the purity of the ballot, and in the absence of some statute on the subject, courts of equity are without jurisdiction to violate the general rule referred to in the first paragraph of this opinion, by substituting through a court of chancery remedies for alleged threatened violations of the election laws, or by controlling or directing the manner in which the election shall be conducted on the day appointed by law for carrying it out."

I do not think that the provisions of the Constitution may be evaded by the judiciary under the guise of performing administrative functions in the exercise of equity jurisdiction. There is to my mind a vast difference between the power of courts to require administrative officers to perform their duties and the attempted exercise of the power by courts to perform administrative functions in lieu of and in the manner provided by law for the exercise of those functions by administrative officers.

To protect the sanctity of and enforce adherence to this provision of the Constitution is peculiarly the province of the judiciary and, therefore, the judiciary is peculiarly charged with its faithful observance.

I am also unable to find in the record any substantial evidence to support the finding that the recall petitions involved contain the names of 15% of the qualified registered voters of the City of Miami as shown by the registration books. As I read the record, no one has testified to such a state of facts. No one has testified that the recall petitions contain 15% of the names of the qualified registered voters of Miami, as shown by the registration books. Mr. Kelly, whose testimony in all these cases has reflected a commendable honesty of purpose, has testified that he *believes* the petitions contain the requisite number of names, but he testified that he had not ascertained that to be a fact. He tes-

tified that it was his purpose to determine whether or not such was a fact by using the poll list and the registration books, but that he had not been given time or opportunity to do so. He did not say the registration books could not be purged so that they would reflect the truth in this regard. The evidence in this regard is reflected by the record, in questions and answers as follows:

"Q. Now, between July 10th and July 11th, what had you done toward purging the registration books?

"A. On July 11th—on the morning of July 11th I had taken the card indexes and was preparing to break those down into precincts. They were in alphabetical arrangement. I was preparing to break them down when I was called into the Commission Room and discharged.

"Q. Did you strike any names from the registration books?

"A. No.

"Q. You had not commenced your purge at that time; is that correct?

"A. No; I have never stricken anything from it; that is, subsequent to that time.

"Mr. Hall: Just a minute. I object to the question and move to strike the answer of the witness until it is shown to the witness what registration books the Attorney is inquiring about.

"Mr. Brigham: At the commencement of the cross examination counsel announced, so there would be no misinterpretation of his questions, that the books were the ones in which the registrant signed his name and took the oath.

"Mr. Hall: With that statement, if it is agreeable to counsel—

"Mr. Sibley: Just a minute. The ones which the Supreme Court of Florida designated as the registration books and said should be purged.

"Mr. Hall: The objection is withdrawn.

"Q. (By Mr. Sibley) Now, had you commenced to purge the registration books and strike names from the registration books after the constitutional writ was dissolved?

"A. I was preparing to, yes.

"Q. You were preparing to strike names from the registration books; is that correct?

"A. Yes.

"Q. Has that purge ever been completed, as far as you know?

"A. No.

"Q. Now you said that it would be a tremendous task to purge the registration books under Ordinance No. 536; on direct examination you made that statement, didn't you?

"A. Yes, uh-huh.

"Q. I believe that is the exact language Mr. Bloodworth used when the papers quoted him, wasn't it; that it was a tremendous task? Do you recall that?

"Mr. Hall: We object to that.

"Mr. Sibley: Withdraw the question.

"Q. (By Mr. Sibley) How long do you estimate it would take you to purge the books in accordance with Ordinance No. 536?

"A. I never made any estimate.

"Q. It would take a long time, wouldn't it?

"A. Yes.

"Q. Would it take three or four or five months?

"A. As I say, I have never made any estimate, and until I would actually engage in the work, would not say, and I never engaged in the work.

"Q. You do know it would take a long time?

"A. Yes, that is my opinion of it.

"Q. And can you tell me what you mean by 'a long time'?

"A. No.

"Q. It is an indefinite period that may run into a number of months; is that correct?

"A. I say I have made no estimate whatever.

"Q. Now, it is alleged in this bill of complaint that you are now ready to deliver a certificate to the City Commission of the sufficiency of the amended petition. Is that true, or is that untrue?

"A. That is not my bill of complaint.

"Q. I know it is not your bill of complaint. Will you answer the question, please sir?

"A. That I was about to deliver a certificate?

"Q. Or that you are ready to deliver a certificate.

"A. No, I could not say that I was about to deliver the certificate until the purging had been accomplished.

"Q. And are you ready now to deliver a certificate of the sufficiency?

"A. I am not in position to do it now. I have been removed again.

"Q. If you were in office, would you now be ready to deliver a certificate?

"A. No, not at once.

"Q. You would first have to purge the registration books, wouldn't you?

"A. That is my understanding.

"Q. Beg pardon?

"A. That is my understanding." * * *

"Q. Now, you are not at the present time ready or willing, if you were Clerk, or if you are Clerk, to submit to the City Commission a certificate of sufficiency of the recall petition; is that correct?

"A. No, I am not."

Shall courts abandon the search for truth because to ascertain it will entail considerable work and some delay?

Is political expediency to overthrow legal rights and prevail over established legal principles in the courts of our country? I shall continue to hope that neither question is ever to be answered in the affirmative.

The record conclusively shows that the so-called poll list was taken and made up from the card indexes heretofore referred to in opinions rendered by this Court in cases involving this proposed recall election and that the poll list was not taken from and is in no manner a transcription of the registration books of the City of Miami. There is no evidence that the poll list is a true and correct list of the qualified registered voters of the City of Miami but the record affirmatively shows that it is not a true list of the qualified registered voters of that municipality and that it is only a list made up from time to time from the card index system and has been used in the holding of elections in connection with the regsitration books to facilitate the holding of the elections and the undisputed evidence is that in cases where an elector appeared at the voting place and applied for the privilege of voting the inspectors first looked to the poll list to see if his name was carried on that but if it was not found there, they then turned to the official record of registration and if his name was found on the registration book he was held to be a qualified registered voter.

I fully appreciate the fact that this is a controversy which should be settled once and for all time and that the proponents of the recall have certain rights but those are rights created by statute and, unless the conditions prescribed in the statute are met, the rights do not accrue.

### On Petition for Rehearing

Per Curiam.—A petition for rehearing filed for the appellants asserts in effect, in paragraph numbered 1, that

the appellants have been denied their constitutional and stattory rights "for that this court, over the objection and protest of the appellants in open court made, has required said appeal to be returnable upon a day less than 30 days from the entry thereof," etc.

An appeal was taken by the appellants November 15, 1938, which gave this court appellate jurisdiction of the cause upon filing the entry of appeal. A certified transcript of the record was filed in this Court, and the cause, with several kindred causes, was orally argued fully and at length upon the merits by counsel for all parties and finally submitted on the day agreed on by all counsel, December 1, 1938. The cause was fully considered by the court before decision rendered December 14, 1938.

There was no suggestion of a diminution of the record which is required when the record is incomplete and no request for leave to file any motion, brief or other document not on file in this court, when or after the cause was finally submitted on its merits. No objection was at any time made to the final presentation and submission of the cause to the court. The court acted with full and complete power and authority as it had hitherto done in causes of the same nature.

The persons who are sought to be recalled are among the appellants who were before the court, and their counsel fully presented and submitted the claimed rights of the parties who are sought to be recalled.

The petition for rehearing has been duly considered. It is not well founded. The assertions above referred to, to the effect that there has been a denial by the court of organic and statutory rights of appellants, are regarded by this court as being improper, and are hereby eliminated. Paul Bros. v. L. B. Special Rd. & Bridge Dist., 83 Fla. 706, t. 708, 92 So. 687, t. 688.

· Rehearing denied.

··Terrell, J., and Whitfield, Brown, Buford, Chapman, and Thomas, J. J., concur.

Order on Motion to Vacate Stay Order.

Terrell, C. J.—On December 14, 1938, we entered final judgment in this cause holding in effect that the Circuit Court of Dade County should order a recall election in the City of Miami as authorized by applicable provisions of the city charter, Chapter 14817, Acts of 1925, Laws of Florida. The essential prerequisites for holding such an election were made to appear and it was also made to appear that the appellants as City Commissioners of Miami, whose duty it was under the law to call such election had refused to do so.

On December 29, 1938, Appellants filed their petition for rehearing in which it was contended that the said final judgment was in error and should be set aside because it resulted in depriving them of the due process and equal protection of the law contrary to the fourteenth amendment to the Federal Constitution. The petition for rehearing was considered and denied January 11, 1939.

On the same date, petition for rehearing was filed; the petitioners also filed their application for the entry of an order staying execution and enforcement of the final judgment for sixty days to permit them to apply to the Supreme Court of the United States for writ of certiorari. The latter application was granted.

The cause now comes on to be dispatched on motion of Appellees to vacate the order staying the enforcement of the final decree for sixty days.

The application for the stay order was not resisted at the time it was made and this is the first time such an order has been resisted in this Court. In fact this Court has always looked with favor on any suggestion to have its orders or decrees reviewed by the Supreme Court of the

United States and being so, applications for stay orders of the kind brought in question have been granted in rather *pro forma* manner.

The stay order was applied for and granted pursuant to Section 350, Title 28, U. S. C. A. which is as follows:

"In any case in which the final judgment or decree of any court is subject to review by the Supreme Court on writ of certiorari the execution and enforcement of such judgment or decree may be stayed for a reasonable time to enable the party aggrieved to apply for and to obtain a writ of certiorari from the Supreme Court. The stay may be granted by a judge of the court rendering the judgment or decree or by a justice of the Supreme Court, and may be conditioned on the giving of good and sufficient security, to be approved by such judge or justice, that if the aggrieved party fails to make application for such writ within the period allotted therefor, or fails to obtain an order granting his application, or fails to make his plea good in the Supreme Court he shall answer for all damages and costs which the other party may sustain by reason of the stay."

This provision of the federal code was construed by Chief Justice Taft in Magnum Import Company v. Houbigant, Inc., 261 U. S. 159, 43 Sup. Ct. 531, 67 L. Ed. 922, wherein the narrow scope of review by certiorari was pointed out when judgments were brought up from the Circuit Courts of Appeals and as pointed out in the latter part of the opinion when brought up from the Supreme Court of States. The remedy was in no sense conferred for the purpose of giving the defeated party another hearing.

By the very terms of the Act quoted, its application is limited to cases in which the judgment is subject to review by the Supreme Court on writ of certiorari. When application is made for suspension of the judgment of the Supreme Court of Florida, it would first be addressed to one

of the Justices thereof and if it is made to appear that the case is one that would likely be taken up on certiorari and one which the balance of convenience requires a suspension of its decree and a withholding of its mandate, the stay order should be granted. It involves no disrespect for the Supreme Court of the United States for the Supreme Court of a state to refuse to withhold its mandate or to suspend the operation of its judgment pending application for certiorari. This is a matter wholly within its discretion. If this Court after considering the cause refuses to stay its judgment, the Supreme Court of the United States' will require an extraordinary showing before it will grant a stay of the decree pending application for certiorari and even after it has granted a writ of certiorari, it requires a clear case and a decided balance of convenience before it will grant such a stay.

Now let us see whether this is a case that the Supreme Court would "likely" review by certiorari and whether or not the balance of convenience requires a stay of the final decree. The necessary prerequisite for such a review is exemplification of a federal question that was affirmatively presented, that its decision was necessary to the determination of the cause, that it was actually decided or that the judgment as rendered could not have been so without deciding it. Adams v. Russell, 229 U. S. 353, 33 Sup. Ct. 846; 57 L. Ed. 1224; Palmer v. State of Ohio, 248 U. S. 32, 39 Sup. Ct. 16, 63 L. Ed. 108; Chicago, et al., v. Maucher, 248 U. S. 359, 39 Sup. Ct. 108, 63 L. Ed. 294.

We have examined the pleadings, the errors argued, the briefs of counsel, the opinion of this Court, and in none of them do we find a federal question presented, that such a question was decided, or was necessary to a decision of the cause. The proceeding grew out of an attempt to enforce the holding of a recall election under certain provisions of

the city charter of Miami, Chapter 10847, Acts of 1925, Laws of Florida. Every controversy was predicated on the interpretation of the applicable provisions of this Act or the procedure required to be taken under it for the purpose of calling and holding the recall election. The first suggestion of a federal question is presented in the petition for rehearing and as we shall subsequently point out, it is not properly predicated, has no support in the record, and was not drawn to the attention of this Court.

Examination of the petition for rehearing discloses that the alleged violations of the Fourteenth Amendment to the Federal Constitution are predicated on the "force and effect" of this Corut's opinion as to certain statutes and rules relating to and defining its procedure in this litigation. Appellants contend that these rules and procedure were not properly complied with.

It is settled law that a decision resting on State procedure or matters affecting the remedy sought to be enforced are governed by the law of the forum, and a decision of a State Court on matters of State pleadings or practice is not reviewable by the Supreme Court of the United States and does not present a federal question. Central Vermont Ry. Co. v. White, 238 U. S. 507, 35 Sup. Ct. 865, 59 L. Ed. 1433; Wood v. Brady, 150 U. S. 18, 14 Sup. Ct. 6, 37 L. Ed. 1433; Wood v. Brady, 150 U. S. 18, 14 Sup. Ct. 6, 37 L. Ed. 981; Gibson v. Mississippi, 162 U. S. 565, 16 Sup. Ct. 904, 40 L. Ed. 1075.

An examination of the pleadings, the briefs, and the judgment complained of discloses that the gist of the grievance under review was the interpretation given by this Court to certain provisions of the charter of the City of Miami, to-wit: Chapter 14847, Acts of 1935, a Florida Statute. No Federal Constitutional question was raised. The law is settled that a decision of a State Court on the question of

compliance with the State Constitution of Statutes or whether State law violates the State Constitution does not involve a federal question. Powell v. Brunswick County, 150 U. S. 433, 14 Sup. Ct. 166, 37 L. Ed. 1134; Leeper v. Texas, 139 U. S. 462, 11 Sup. Ct. 577, 55 L. Ed. 225; Missouri, ex rel., v. Harris, 144 U. S. 210, 12 Sup. Ct. 838, 36 L. Ed. 407. In order to give the Supreme Court of the United States jurisdiction to review a judgment of the highest court of a State, the validity of a State Statute must have been drawn in question on the ground of being repugnant to the Constitution or treaties of the United States. Adams v. Preston, 22 How. 473, 16 L. Ed. 273; Green v. Frazier, 253, U. S. 233, 40 Sup. Ct. 499, 64 L. Ed. 878; Scudder v. Comptroller of New York, 175 U. S. 32, 20 Sup. Ct. 26, 44 L. Ed. 62.

The judgment brought in question had to do exclusively with the interpretation of a State Statute. In so far as the Federal Constitution was concerned, its validity was not challenged. Such a decision resting solely on construction and not involving validity is not reviewable by the Federal Court. Ferry v. King County, 141 U. S. 668, 12 Sup. Ct. 128, 35 L. Ed. 895; Snell v. Chicago, 152 U. S. 191, 14 Sup. Ct. 489, 38 L. Ed. 408.

The mere fact of being forced into a recall election, if all statutory proceedings leading up to it are regular, is no basis for a federal question. Controversy on that point gave rise to this litigation and we have held the proceedings thus far to be in substantial compliance with the challenged statute. The question of whether or not Appellants have committed acts that subject them to recall is one of fact that the people and not the Courts must determine. The Courts can require that the recall election be called and held according to law and this is exclusively a State Court

function when as here no question of validity but only questions of interpretation and procedure were invoked.

The argument that the "force and effect" of this Court's opinion is to divest Appellants of their right to the emoluments of their office contrary to the Fourteenth Amendment to the Federal Constitution is necessarily based on the assumption that the recall election will result in their recall; for otherwise, they cannot be relieved of such emoluments. The answer to this argument is that they were elected to office with the knowledge that they were subject to recall, that this Court has held that the prerequisites to such an election have been thus far complied with and that such prerequisites are wholly procedural and do not present a federal question. Such a contingency will not support a federal question.

Under the rule announced by Mr. Chief Justice TAFT in Magnum Import Company v. Houbigant, Ind., *supra,* if the case is one that the Supreme Court would "likely" review on certiorari and the balance of convenience would require, the stay order should be granted. If the likelihood of such review was so much as fifty-fifty, or maybe in some cases less, I would say that the stay order should be granted but under the law and the facts controlling the application for certiorari in this case, the probability of its being granted is too remote to be perceptible. Certainly the balance of convenience would require that it be denied.

Having reached this conclusion, it follows that the stay order was improvidently issued. The motion to vacate is therefore granted.